PEOPLE v. MILKS.

(Supreme Court, Appellate Division, Fourth Department.   March 11, 1902.)

1. WITNESSES—CROSS-EXAMINATION—IMPEACHMENT.
    Where, on a trial for arson, a witness for the prosecution testified to alleged conversations with defendant after the fire, in which the latter procured such witness to see what his codefendant had said, it was proper to show on cross-examination that defendant had been instrumental in having the witness' brother indicted, and that such witness entertained hard feelings against the defendant, as showing that the presumption that, on account of the witness' relations with defendant, he would be favorably disposed, was incorrect.

2. SAME—REDIRECT EXAMINATION.
    Where, on a trial for procuring a party to commit arson, the prosecution cross-examined a witness, who testified that the party committing the arson was on the night of the fire at such a locality as practically to have rendered it impossible for him to have committed the offense, as to his failure to disclose his knowledge earlier in the litigation, it may be shown on redirect examination why a disclosure was not made earlier.

3. SAME—CODEFENDANT—EVIDENCE OF ACQUITTAL—ADMISSIBILITY.
    Where the jury in a prosecution for arson alleged to have been done through another person were fully aware that defendant and such other person were jointly indicted for the offense, and the latter gave evidence which, if true, entitled defendant to an acquittal, evidence that such person had been tried and acquitted was proper to show that such person had no personal interest in the matter, and that his testimony was not subject to the discrediting consideration of bias in that respect.

Appeal from Cattaraugus county court.

Gilbert Milks was convicted of arson, and from the judgment and an order denying a motion for a new trial he appeals.   Reversed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

M. B. Jewell, for appellant.
J. M. Congdon, for the People.

HISCOCK, J.   The defendant was jointly indicted with one Mitchell Smith for having upon June 4, 1898, set fire to a certain barn which was the property of said Milks.   He was tried separately and apart from Smith.   He was convicted upon a previous trial, but such conviction was reversed by this court.   66 N. Y. Supp. 889. Milks was several miles away from the place of the fire at the time it occurred, and the theory of the prosecution is that he procured Smith to set fire to the barn and other buildings which were burned with it.   Although it does not appear in the record, it did appear without contradiction upon the argument, that Smith, upon a second trial, has been acquitted.   We therefore start out with the somewhat incongruous and illogical condition that Smith, who was charged with actually having applied the match to the buildings, has been found by the jury not to have done so, and defendant, who is charged with having fired said buildings only and solely through the hand of Smith, is found to have committed such act.

Defendant's counsel has urged with great vigor and earnestness that upon the merits the evidence in this case was not sufficient to

sustain the verdict of the jury, and that the latter should be set aside as against the weight of evidence. The conclusions we have reached as to the merit and correctness of certain objections and exceptions taken upon the trial in behalf of the defendant render it unnecessary for us to pass upon such contention. As leading up to and bearing upon the review of the exceptions referred to, however, we not only may, but should, bear in mind that the evidence certainly presented a very close question of fact as to the guilt of the accused. The decision as to his guilt or innocence upon the testimony offered called for the most careful deliberation and well-directed consideration by the jury. In addition to the fact, not at all uncommon, that the evidence against him was purely circumstantial, a large portion of testimony which, from its nature, must have had great weight with the jury, related to defendant's alleged attempts to bribe witnesses and suppress evidence. Some of the latter certainly crowded to the border line of competency. We refer to these features as indicating the great degree of protection from the erroneous omission and rejection of evidence to which the defendant was entitled. Upon a trial where the testimony was so conflicting, an error which in some other case could be regarded as immaterial might easily be sufficient to supply the little additional weight necessary to turn the verdict against him. The presumption always applicable, unless clearly rebutted by the record, that an error committed against the defendant upon a criminal trial is material and harmful, especially applies to this case. In three instances evidence sought by the defendant was, upon the objection of the people, excluded by the learned county judge, and, in our opinion, error thereby committed.

One Fuller, having been sworn in behalf of the people, testified to alleged conversations with the defendant after the fire in which the latter, in substance, raised the question whether Smith had disclosed information about the fire, and procured said Fuller to go and see the latter upon this subject. Fuller was a connection by marriage of the defendant. His evidence was quite long, and, if believed, tended strongly to prove guilty relations by the defendant to the fire. In fact, there was no one witness, in our opinion, whose testimony, if believed, was liable to be more potential against the prisoner. Upon the cross-examination defendant's counsel sought first to show that there had been trouble between the latter and a brother of the witness who was sworn upon the former, but not upon this, trial. Such evidence as was then asked for was objected to and properly excluded. The defendant's counsel then asked these questions: "Q. Did you understand that at one time Gilbert Milks had been instrumental in getting your brother Wilson D. Fuller indicted for selling hard cider, and by reason of that do you entertain some hard feelings against Milks?" The district attorney "objected to the first part of the question, and the court sustained the objection, and the defendant duly excepted." It was then asked: "Q. Did you know that there had been some trouble between Milks and your family in the past?" This question was objected to and excluded. We are unable to formulate any sufficient reason for ex-

cluding this evidence. The first question fairly called for the attitude of the witness toward the man against whom he was testifying. It not only was not objectionable, but eminently proper, to embody in the question calling for his feelings the further query as to the cause upon which they were based. We know of no more elementary rule than that one of the chief purposes of a cross-examination is to disclose the situation and disposition of a witness—whether friendly or unfriendly—towards the respective parties to the litigation in which he is testifying. In this case, with the presumption which would naturally arise in the minds of jurymen that, on account of his relations with defendant, he would be favorably predisposed towards him, it was most appropriate that an opportunity should be offered to disclose, if possible, that this was incorrect, and that his attitude was really one of unfriendliness.

One Perkins was called in behalf of the defense to testify that upon the night of the fire he saw Smith at such a locality as practically to have rendered it impossible for him to have started the conflagration as claimed by the prosecution. The district attorney most vigorously and pointedly cross-examined this witness as to his failure to disclose this knowledge and information earlier in the litigation. His cross-examination tended to raise a serious doubt as to the probability of this witness having maintained silence so long if he really possessed the knowledge in question. Upon the redirect examination the counsel who had called the witness sought to have him explain why he had not so disclosed his information that it might be earlier utilized by the defendants who were on trial. This evidence was objected to and excluded, and thereby we think another simple and elementary rule in regard to the examination of witnesses was violated. The evidence of this witness, if it was true, was of great importance to defendant. The counsel for the people had by his cross-examination apparently seriously affected his credibility, and it was justly due to the defendant that he might call upon the witness to give any explanation which would reinstate him in the good opinion of the jury. The district attorney rather seeks to sustain these rulings upon the theory that it would be impossible for the witness to give any reasonable or decent excuse for his reticence under the circumstances; also that the defendant's counsel in one of his questions indicated the excuse which witness would have given, and that if so given it would have been clearly frivolous. As to the latter, we do not think it can be assumed that the witness would necessarily have given an excuse framed in the words of counsel's question, and, as to the former, we think it was his privilege to give his excuse, and let the jury pass upon its efficacy.

Defendant called, as a witness in his behalf, Smith, who was jointly indicted with him for causing this fire, and who gave evidence which, if true, absolutely entitled defendant to an acquittal. The latter's counsel sought to show that Smith had been tried upon the indictment against him and acquitted, and this evidence was objected to and excluded. We do not believe that this evidence was competent as offering a legal bar to the conviction of this defendant, as suggested by counsel. We do, however, think that the evidence was

proper for the purpose of disclosing the situation of Smith as a witness. We have no doubt, from the record, that the jury were fully apprised of the fact that Smith and the defendant were jointly indicted. The fact of the acquittal of the witness does not appear anywhere in the record. Apparently, he occupied the stand as a witness who had a vital personal interest in establishing that the defendant was not guilty upon the theory claimed by the prosecution. We think that it was very proper, under all of the circumstances of this case, that it should be made to appear that he had no such personal interest, and that therefore his testimony was not subject to the discrediting consideration of bias in that respect.

For these reasons, we conclude that the judgment of conviction and order denying the motion for a new trial should be reversed, and a new trial granted. Judgment of conviction and order denying motion for new trial reversed, and new trial ordered, and proceedings remitted to the clerk of Cattaraugus county, pursuant to section 547, Code Cr. Proc. All concur.