OPINION OF THE COURT
Benjamin Altman, J.
The defense moved to prove by extrinsic evidence the bias, hostility, and interest of the prosecution’s principal witness.
Further, in what must be regarded as a novel question by this court, the defendant seeks to call to the stand the defendant’s former defense attorney. By so doing, the defense would seek to show the initial hostility and bias of the prosecution witness toward the attorney. In turn, the defense seeks to show this hostility and bias is directed derivatively toward the defendant, the former client of the defense attorney.
The defendant, in the case now before this court, was arrested for illegal possession of a weapon. The arresting officer, Police Officer Guarinó, was allegedly informed by the defendant Champen soon after the arrest that one Elliot Wilk (then of the Legal Aid Society, now a Judge in the Civil Court of New York City) would be representing him on this case.
*178 The officer allegedly replied that Mr. Wilk was "a good lawyer, but he’ll never beat this collar.”
Some historical perspective is necessary at this point. First, the defendant was allegedly a leader during the Attica prison rebellion. The defense contends that the leadership role, plus current activity in a prisoners’ rights movement and the role as a community leader in Harlem, has caused the defendant to be disliked by many in the law enforcement community.
Also, another arrest made by Officer Guarino bears on the defense claims.
In January of 1977, Officer Guarino arrested three persons, including one Willie Bridges. Bridges was charged with two counts of attempted murder in the first degree of Officer Guarino and his partner, criminal possession of a weapon in the second and third degrees, and one count of criminal possession of stolen property. In no way was defendant Champen involved.
Defendant Bridges was represented by Mr. Wilk.
After cross-examination of Officer Guarino at the Bridges trial (the officer being the sole witness of the People), the Trial Judge issued a trial order of dismissal for insufficient evidence on the charges of attempted murder and the two counts of criminal possession of a weapon.
Thus, the defense seeks to call former defense counsel (now Judge Wilk) as a witness. The defense contends the People’s witness, Officer Guarino, harbors ill feelings for the then defense counsel Wilk in that Wilk defended Bridges and the major offenses against Bridges were dismissed soon after counsel Wilk had cross-examined Officer Guarino as to the events and circumstances surrounding the arrest of Bridges.
The defense seeks to show that there is a hostility against attorney Wilk so great that the officer is "derivatively” biased toward the defendant Champen, a potential client of Wilk. This feeling, contends the defense, is amplified in that most law enforcement officials dislike the defendant Champen due to his activist role inside and out of prison.
Therefore, the issue presents itself as to whether the attorney Wilk should be allowed to testify to show alleged bias and hostility directly toward Wilk which, by association or derivation, would be directed against the defendant now on trial.
The hostility of a witness toward a party against whom he is called may be proved by any competent evidence (People *179 v McDowell, 9 NY2d 12). Such hostility may be shown by cross-examination of the witness, or witnesses may be called who can swear to facts showing it (People v Brooks, 131 NY 321).
Again, the case law sets forth a pattern — a defendant on trial, a prosecution witness with perhaps some hostility to defendant.
 While it is improper for a trial court to wholly exclude all evidence which is presented to show hostility, the extent to which an examination may go for purposes of proving the hostility of a witness is within the discretion of the court (see People v Thomas, 92 Misc 2d 992).
In People v Milks (70 App Div 438), the defendant was on trial for arson. He was charged with hiring one Smith to actually set the fire.
A witness, Fuller, was called by the People and testified to alleged conversations with defendant after the fire, in which the defendant wondered if Smith had told authorities of the fire. The defendant then requested Fuller to see if indeed Smith had talked to the authorities. Fuller testified at length and gave potentially damaging testimony against the defendant.
The Appellate Division held it proper to show that the defendant had played a large part in having the witness’ brother indicted, and that the witness Fuller harbored a grudge against the defendant.
Seeking to learn the attitude of the witness toward the man against whom he is testifying is proper. One of the chief purposes of cross-examination is to reveal the disposition of a witness towards the respective parties to the litigation in which he is testifying.
It would appear to the court that the officer, in his capacity as a witness, may be asked as to his disposition toward the defendant. Another witness may be called to testify as to a prosecutor’s witness’ bias and hostility toward the defendant. However, for still another witness to take the stand and state the prosecutor’s witness is hostile toward the defendant due to the defendant’s position as a conduit for derivative hostility and bias initially directed toward that witness, and not toward the defendant, is not permissible as being too tenuous here. It stretches the concept to the breaking point.
Assuming the statement was made, this court hardly sees *180 hostility and bias from the statement referring to Wilk, "He’s a good lawyer, but he’ll never beat this collar.”
Also, at the time of the defendant’s arrest there is no proof that the People’s witness was aware who the defendant’s attorney would be. There is a great deal of question that Officer Guarino, when at the police precinct, knew who was going to represent the defendant.
 As seen from, the case law, the objective is to bring in and focus evidence showing the prosecution witness is directly hostile to the defendant. While the hostility and bias of a witness toward the party against whom he is called may be provided by any competent evidence (People v McDowell, 9 NY2d 12, supra), the situation here requires some modification. While prior examination of the witness is not required (see People v Brooks, 131 NY 321, supra), the court feels it is incumbent upon the defense to clearly demonstrate the viability of this derivative hostility and bias before the witness would be allowed to testify.
The case law appears to speak clearly. When there is a question of hostility or bias as to a prosecution witness toward the defendant, the defendant is the primary target of the alleged hostility and/or bias. In no instance is the defendant a mere conduit of hostility which is allegedly principally directed at a third party.
If a showing of derivative or secondary bias is to be permitted, such bias would have to be substantiated. This has not been done here.
Therefore, the defendant’s motion to prove by extrinsic evidence in order to show bias and hostility of the prosecution’s principal witness is granted to the extent such evidence will be directly connected with the defendant’s activities.
The motion to have the defendant’s former defense attorney, Wilk, testify to show derivative bias and hostility is denied.