## Court of Appeals.

### March 1, 1892.

### PEOPLE v. RACHEL BROOKS.

(43 St. Rep. 294; 131 N. Y. 321.)

1. Witness—Hostility.

The hostility of a witness to the party calling him may be shown by any competent evidence.

2. Same.

The witness need not be first examined as to his hostility before other witnesses are called.

3. Same.

The extent of such examination is in the discretion of the trial judge.

4. Appeal—Court of appeals.

The court of appeals cannot grant a new trial on account of the intemperate language used by the district attorney upon the trial.

5. Same.

Section 527 of the Criminal Code refers only to appeals to the supreme court.

Appeal from judgment of the supreme court, general term, fourth department, affirming judgment of conviction of arson in the first degree.

Louis Marshall, for appellant.

T. E. Hancock, dist. atty., for respondents.

EARL, Ch. J.—The defendant was indicted for setting fire to the store occupied by her in the city of Syracuse on the 27th day of October, 1890. She was brought to trial in the court of sessions of Onondaga county in February, 1891, and was convicted of arson in the first degree, and was sentenced to the Onondaga Penitentiary for the term of fifteen years. Her conviction having been affirmed by the general term of the supreme court she then appealed to this court.

The learned counsel for the defendant has brought to our attention three grounds upon which he claims the judgment should be reversed.

Upon the trial the principal evidence adduced against the defendant to show her guilt was that of Charlotte Brooks, the daughter of her husband by a former wife, who was about eighteen years old. She testified that three or four days before the fire the defendant required her to take an oath, by kissing the Jewish Bible, that she would not tell to any one what she was about to say to her, and that after she had taken the oath and promised that she would not tell, she said to her that she had bills for goods to settle, and that there was a judgment against her, and she was going to make a bonfire of the goods in the store, and burn them up; and that after she had taken the oath the defendant told her if she did tell what she had said to her she would be sent to prison for twenty years for perjury. There was other evidence pointing to the guilt of the defendant and corroborating the story related by the witness Charlotte.

The defendant was called as a witness on her own behalf, and these questions were put to her by her counsel: "Now state whether or not Charlotte was friendly to you or unfriendly?" "Did you and Charlotte have frequent difficulties during that time?" (Meaning the time previous to the fire.) "Did Charlotte assault you on other occasions previous to the fire?" All these questions were objected to on the part of the prosecution as incompetent, because Charlotte had not been examined as to the particular matters enquired of on behalf of the defendant.

The trial judge sustained the objection and excluded the evidence because Charlotte had not been examined as to the same matters, and her attention had not been called to the particular matters enquired of. In making the ruling the trial judge said: "You had the witness here and can ask anything you wish of her that she has not testified to, and if you think she has not told the truth you can ask the witness about it, and I think that is as far as you can go; I think the rule is this: That a witness may be cross-examined as to his or her attitude of mind in regard to the defendant, and his attention must be called to each and all the transactions upon which the counsel for the defendant desires to give evidence. If the witness admits the acts and declarations that the defendant claims were made and done, that is the end of it. If the witness denies, then I think it is competent to call other witnesses to contradict those matters; but to let a witness go off the stand, not having questioned the witness as to the particulars, and then calling third parties to prove independent transactions showing the attitude of the mind of the witness toward the party, I think is not the rule.' So I have allowed, and do allow, this witness to testify as to any transactions bearing upon that point in regard to which the witness Charlotte was examined." And the judge said further: "I should say that the witness referred to is in court now, so that there is no loss to the defendant by the application of the rule as I understand it." But the counsel insisted upon his right to examine the defendant for the purpose of proving Charlotte's hostility towards her without first examining Charlotte in reference to the same matter.

We think the rule of law laid down by the trial judge was erroneous. The hostility of a witness towards a party against whom he is called may be proved by any competent evidence. It may be shown by cross-examination of the witness, or witnesses may be called who can swear to facts showing it. There can be no reason for holding that the witness must first be examined as to his hostility, and that then, and not till then, witnesses may be called to contradict him, because it is not a case where the party against whom the witness is called is seeking to discredit him by contradicting him. He is simply seeking to discredit him by showing his hostility and malice; and as

that may be proved by any competent evidence, we see no reason for holding that he must first be examined as to his hostility. And such we think is the drift of the decisions in this state and elsewhere. Hotchkiss v. Germania F. Ins. Co., 5 Hun, 90; Starr v. Cragin, 24 id. 177; People v. Moore, 15 Wend. 419; People v. Thompson, 41 N. Y. 6; Schultz v. The Third Ave. R. R. Co., 89 id. 242; Ware v. Ware, 8 Greenl. 42, 53; Tucker v. Welsh, 17 Mass. 160; Day v. Stickney, 14 Allen, 255; Martin v. Barnes, 7 Wis. 239; Robinson v. Hutchinson, 31 Vt. 443; New Portland v. Kingfield, 55 Me. 172; Hedge v. Clapp, 22 Conn. 262; Cook v. Brown, 34 N. H. 460. So we think the trial judge laid down an erroneous rule of law. But we are still of opinion that no harm was done to the defendant. The extent to which an examination may go for the purpose of proving the hostility of a witness must be, to some extent at least, within the discretion of the trial judge. We said about it in Schultz v. The Third Ave. R. R. Co., supra, that "the evidence to show the hostile feeling of a witness when it is alleged to exist should be direct and positive, and not very remote and uncertain, for the reason that the trial of the main issue in the case cannot be properly suspended to make out the case of hostile feeling by mere circumstantial evidence, from which such hostility or malice may or may not be inferred."

Before these questions were excluded, the defendant's counsel on the examination of Charlotte proved by her that she and the defendant had had frequent altercations; that the defendant "used to whip her lots of times;" that on a certain occasion when she was imprudent to the defendant not long before the fire, the defendant threw her down; that on that occasion the defendant assaulted her and bit her and pushed and knocked her down on the floor, and when she got up she said to the defendant "You will be sorry, what did I do to you? My mother would not knock me down;" and that her troubles with her step-mother were frequent; that they had trouble on every rainy day; that "she was disagreeable to her on rainy days." And the defendant, before these questions were excluded, testified that a few days before the fire she and Charlotte had an altercation, and that "Charlotte got mad and pulled her down and slapped her in the face, and pounded her on the back" so that she fell down

and came near fainting away. We think there was ample evidence to show the state of feeling between the defendant and Charlotte, and if the examination of the defendant upon that subject had been much further prolonged it could not have added any weight to the evidence already given on that subject. Sufficient evidence for every purpose of the trial had been given to show difficulties and hostilities between the defendant and Charlotte, and therefore it is clear that the defendant was not harmed by the exclusion of further evidence on that subject. Besides, the jury utterly disregarded the defendant's evidence. She denied under oath all the evidence tending to implicate her in the crime, and explicitly denied that she had stated to Charlotte her intention to burn the goods in the building, and gave some evidence tending to cast suspicion upon Charlotte as the author of the crime. This is therefore a case where the rule laid down in section 542 of the Code of Criminal Procedure should be applied. That section provides as follows: "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

It is also claimed by the defendant's counsel that the judge erred in his charge to the jury. Upon the trial of the action the defendant called several witnesses who testified to her good character. After fairly charging the jury on the question of reasonable doubt, and the effect of good character, he used this language: "And in the trial of the case, if that reputation has been shown to be good, yet if the evidence on the trial indicates corruptness, fraudulent practice, bad heart, dishonesty, fraud, it rebuts, so far as it goes, the reputation for good character. That is to say, positive testimony of the commission of a crime extinguishes it altogether, if you believe the testimony." After he had finished his charge the counsel for the defendant said: "The charge is very satisfactory, and I do not rise to find any fault with it. Your honor has charged that if the jury find that there is reasonable doubt, they must acquit. Now, I ask your honor to charge that good character may be sufficient to raise that reasonable doubt which requires the jury to acquit." And the judge so charged. Then the counsel for the defendant further said: "Your honor charged that if on the trial of a case it

is shown that the person has been corrupt and guilty of fraudu-
lent practices it rebuts the evidence and the importance at-
tached to it of good character; is an answer to it. I do not
give your honor's precise language; but that in substance and
what your honor did charge upon that question, and all, I take
exception; and furthermore I ask your honor to charge that
these remarks are not applicable to this case." The judge re-
fused to so charge. We do not think these exceptions to the
charge were well taken. The judge had in his charge given the
defendant the full benefit of the evidence as to her good char-
acter. He did not charge that the evidence of good character
was not to be taken into account with all the other evidence
upon the question of her guilt or innocence. He did instruct
them that if there was positive testimony of the commission
of the crime by her which the jury believed, it extinguished the
evidence of good character all together. That is literally true.
If the jury upon any trial find positive evidence which they be-
lieve, that the defendant committed the crime charged, it must
utterly overwhelm or destroy the effect of the evidence as to
good character. If the judge had charged that the jury had no
right to take into account the good character of the defendant in
the case of positive evidence of her guilt, it would undoubtedly
have been erroneous.

If he had charged them that they should not weigh the evi-
dence as to the defendant's character with all the other evi-
dence, however strong and positive, it would have been erron-
eous. The evidence of character may, however strong the other
evidence is, raise a doubt in the minds of the jury which the
defendant is entitled to have the benefit of. If the instructions
of the judge upon the question of character were not sufficiently
explicit, the defendant should have requested a further charge,
calling attention to further instructions which he desired the
jury to have. After the judge had laid down the law quite
plainly pertaining to evidence of good character, and had at the
request of the defendant's counsel instructed the jury that good
character might be sufficient to raise a reasonable doubt which
required the jury to acquit, if the defendant's counsel thought
any further instructions were needed to protect his client, he

should have asked for them.   So we find no error in the charge to the jury.

We are also asked to reverse the judgment on account of intemperate language used by the district attorney in his address to the jury, to which no exception whatever was taken.   It is a sufficient answer to this claim to say that this court has no jurisdiction to grant a new trial in such a case as this, unless exceptions appear in the record which presents questions of law. The supreme court, under section 527 of the Code of Criminal Procedure, could, in the exercise of its discretion, have granted a new trial in this case.   In the early part of that section provision is made for a stay of the execution of a judgment in a criminal case upon an appeal to the supreme court, and in the last clause of the section it is provided as follows:  "The appellate court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below." That clause has reference only, as we have held, to appeals to the supreme court.   People v. Hovey, 92 N. Y. 554; People v. Guidici, 100 id. 503; People v. Donovan, 101 id. 632.

We see no reason to doubt that this conviction was justified by the evidence, and finding no error of law prejudicial to the defendant, is should be affirmed.

All concur.