UNITED STATES of America,
Appellee,

v.

Emanuel LESTER, Defendant-Appellant.

No. 267, Docket 24395.

United States Court of Appeals
Second Circuit.

Argued March 14, 1957.

Decided Sept. 30, 1957.

Hincks, Circuit Judge, dissented in part.

See also 21 F.R.D. 30.

**330**

Bernard Tompkins, New York City (Herbert Edelhertz, New York City, on the brief), for defendant-appellant.

George C. Mantzoros, Asst. U. S. Atty., S. D. of New York, New York City (Paul W. Williams, U. S. Atty., and Robert Kirtland, Asst. U. S. Atty., S. D. N. Y., New York City, on the brief), for appellee.

Before MEDINA, HINCKS and STEWART, Circuit Judges.

HINCKS, Circuit Judge.

The appellant, in a previous civil action brought by Barbera against one Goldstein, had testified that he saw Goldstein sign a written contract to sell to Barbera 100,000 pounds of metal at $1.-70 per pound. On the basis of this testimony he was indicted for perjury. On the trial below, Goldstein denied that the signature on the purported contract was his and his denial was supported by a handwriting expert of the F. B. I. staff who gave it as his opinion that the purported signature was a forgery.

At the threshold of the appeal is a claim of error based on an alleged defect in the indictment. The statute on which the indictment is laid, 18 U.S.C.A. § 1621, extends only to a false oath "in any case in which a law of the United

States authorizes an oath to be administered." The appellant asserts that there is no such law. We disagree. An oath administered pursuant to 28 U.S. C.A. § 953, which authorizes clerks of court and deputies generally to administer oaths, satisfies the perjury statute. In United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92, the Supreme Court sustained the sufficiency of an indictment for perjury based upon an oath taken before a subcommittee of the Senate the authority for which was a general statute, 2 U.S.C.A. § 191, authorizing committees of Congress "to administer oaths to witnesses in any case under their examination." In United States v. Perl, 2 Cir., 210 F.2d 457, we sustained an indictment for perjury based on an oath administered by a grand jury foreman under the authority of the general provisions of Rule 6(c), Federal Rules of Criminal Procedure. Equally sufficient for purposes of the perjury statute is the general authority to clerks and deputies carried by 28 U.S. C.A. § 953.

Appellant next protests that the proofs failed to satisfy the quantum of proof required for perjury convictions by the leading case of United States v. Wood, 14 Pet. 430, 440, 10 L.Ed. 527, and by subsequent cases such as American Communications Ass'n v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 94 L.Ed. 925, and United States v. Remington, 2 Cir., 191 F.2d 246, 249, certiorari denied 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325. But as Wigmore observed, "it is now everywhere conceded in the United States that a single witness, somehow corroborated, suffices." Wigmore on Evidence, 3rd Ed., Vol. VIII, § 2042. Here, in addition to Goldstein's testimony that he never signed the purported contract, there were in evidence writings from which it could be reasonably found by inspection, especially when aided by the expert testimony, that the purported signature on the contract was a tracing and, hence, not one made by Goldstein in the appellant's presence. That was a fact which, if true, necessarily demonstrated not only that the appellant's prior testimony

had been false but also that he knew it was false.

■ We hold, therefore, that there was enough evidence to support the conviction: the direct testimony of a second witness was not required. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; United States v. Flores Rodriquez, 2 Cir., 237 F.2d 405, 408; Doto v. United States, 96 U.S.App. D.C. 17, 223 F.2d 309, certiorari denied 350 U.S. 847, 76 S.Ct. 59, 100 L.Ed. 754; Arena v. United States, 9 Cir., 226 F.2d 227, certiorari denied 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830; United States v. Goldstein, 2 Cir., 168 F.2d 666, 668. The holdings in the cases relied on by the appellant, including those cited above, are not to the contrary: the language therein was directed to facts not present here.

■ Barbera's letter, of January 19, 1953, was properly excluded. As to the issues on trial, the content of the letter was hearsay notwithstanding its receipt by Goldstein. It did not become admissible merely because Goldstein's reply thereto of January 23, 1953 (to which no objection had been interposed) had been received to support the Government's proofs that Goldstein's signature thereon had been used to trace the purported signature on the contract with Barbera. Equally inadmissible was Barbera's letter of March 19, 1953: it was hearsay and wholly immaterial to any issue before the court.

■ Certainly the judge did not abuse his discretion when he refused, at appellant's request, to call Barbera as a witness. There was no assurance that Barbera had material testimony to give. Moreover, although he had been the appellant's business associate, the appellant —like the prosecution—lacked sufficient confidence in his credibility to present him as a witness. This claim of error is utterly without substance. United States v. D'Ercole, 2 Cir., 225 F.2d 611; United States v. Nirenberg, 2 Cir., 242 F.2d 635, certiorari denied 354 U.S. 941, 77 S.Ct. 1405, 1 L.Ed.2d 1539. Cf. United States v. Marzano, 2 Cir., 149 F.2d 923, 925.

The criticism, of the charge, we think, was wholly unfounded and too captious to deserve discussion.

Thus far the Court is in agreement. From this point on, the writer of this opinion will speak only for himself.

The appellant contends that he was denied a fair trial in that the trial judge unduly restricted his cross-examination of Goldstein, the Government's chief witness. In my opinion, the objection is without substance: I think that throughout the cross-examination the judge presided with altogether commendable patience, fairness and firmness. Although Goldstein's direct testimony filled only 10 pages of the printed transcript, the cross-examination ran to 140 pages and related principally to matters not raised by the direct examination. Indeed, in allowing appellant's counsel, in his effort to impeach the credibility of Goldstein's testimony, to spend so much time in senseless repetition of questions already excluded, I think the judge was unduly indulgent. If, as appellant somewhat vaguely charges in his brief, there was any "one-sidedness" of the court's rulings, it was because of the persistence of appellant's counsel in seeking to develop matter already excluded,—and properly so, in my opinion. I find no rulings excluding questions properly directed to impeachment. Indeed, appellant's counsel on brief posits his claim of reversible error made in the course of this cross-examination not on rulings excluding identified questions but only on vague assertions that "the trial judge restricted, curtailed, hampered and frustrated the defense"; that after the appellant's objections had been "made clear to the Court in argument in chambers," the Court "in these discussions * * * showed his attitude and intention not to permit any leeway in the cross-examination of Goldstein * * *." In my opinion a reversal should not be predicated on such vague generalities.

The appellant sought to introduce evidence of the official price regulations which penalized sales of nickel anodes in excess of 76¢ per pound asserting that the regulations were effective when the

alleged contract was made. The exclusion of the price regulations is the ground of another claimed error. This evidence, if received, would have shown that the contract, which called for a sale at $1.70 per pound, was violative of the regulations. Since the illegality of the contemplated transaction was not in issue under the indictment below, this offer of extrinsic evidence was admissible only if, as the appellant contends, the contemplated violation of the regulations showed that Goldstein had an interest or bias to testify as he did,—i. e., to deny that he had signed a contract calling for a black market transaction. Thus is posed the question whether the evidence offered sufficiently showed that Goldstein's testimony may have been influenced by his self-interest.

As Wigmore observed with respect to evidence of bias—and it is implicit from his treatise that the observation is equally applicable to evidence of interest— "[t]he range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing the probable effect is out of place. Exact concrete rules are almost impossible to formulate and where possible are usually undesirable. In general, these circumstances should have some clearly apparent force as tested by experience of human nature or, as it is usually put, they should not be too remote." Wigmore on Evidence, 3rd Ed., Vol. III, § 949. And after discussing common varieties of circumstances indicative of bias, Wigmore concludes: "New circumstances will constantly be presented as suggestive of personal prejudice; and the decision should be left entirely in the hands of the trial judge." Id. § 950.

Perhaps extrinsic evidence that the contract called for an illegal sale would have been admissible as proper impeachment for self-interest if the situation disclosed had been such that Goldstein had an interest to convict the appellant of perjury in order to save himself from a black market conviction. But such was *not* the situation: it was conceded that no sale, legal or illegal, had ever been consummated between Goldstein and Barbera. All authority to enforce price regulations had terminated on April 30, 1953. 50 U.S.C.A.Appendix, § 2166. And when Goldstein gave his testimony below the statute of limitations had run on such sales, attempted sales and conspiracies to sell. That being so, there was nothing in the record to suggest that Goldstein's testimony was motivated by a desire to escape a black market conviction. At most, an admission of his signature on the written contract would have indicated that he had not scrupled to embark on a black market transaction. If such was his business attitude, it was at most a reflection on his character. But a mere desire to avoid an unfavorable reflection on his character is not, in my opinion, an "interest" or "bias" within the rule which permits the admission as of right of extrinsic evidence in aid of impeachment.

I would hold, therefore, that this claim of error should be overruled: that in the situation presented at the trial the judge did not abuse his discretion by excluding the price regulations because of the lack of any reasonable tendency to show that Goldstein's testimony might be motivated by bias or self-interest. Cf. Bailey v. Baltimore and Ohio Railroad Co., 2 Cir., 227 F.2d 344. And of course for its bearing on general character impeachment and on other collateral matters such extrinsic material, even if broadly relevant, was not admissible. United States v. Sager, 2 Cir., 49 F.2d 725; Bianchi v. United States, 8 Cir., 219 F.2d 182, certiorari denied 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249. None of the cases cited by the appellant to these points are apposite.

Believing that none of the appellant's claimed errors have substance, I would affirm. However, for the reasons stated in Judge Medina's opinion, in which Judge Stewart concurs and from which I dissent, the judgment of conviction is,

Reversed and remanded.

MEDINA, Circuit Judge.

While otherwise in agreement with the views of our brother HINCKS, we hold

that there must be a new trial because of the exclusion of the OPA Regulations in force on December 23, 1952 and the undue restriction of the cross-examination of the prosecution's principal witness Goldstein.

The issue in the case was a simple one: did Lester lie when he said Goldstein signed the agreement of December 23, 1952, for the purchase and sale of 100,000 pounds of cadmium ingots at $1.70 per pound. In other words, was such an agreement entered into between Barbera and Goldstein on that date. Goldstein testified that he signed no such agreement and that he made no such agreement. Appellant was entitled to establish by the cross-examination of Goldstein and by other competent evidence that Goldstein did make such an agreement. One way of doing this was to show that Goldstein had a motive to testify falsely and that what he said on the subject was not to be believed by the jury.

The theory on which appellant proceeded was that the price specified in the contract was illegal if the subject matter was nickel, that the parties inserted the description cadmium rather than nickel although they well knew that what was intended to be purchased and sold was nickel, because nickel could not lawfully be sold at more than 76 cents a pound; and that Goldstein repudiated the contract and later denied he had signed it because he could and did sell the same metal or part of it to a man named Glaubman on January 23, 1953 at $2.15 a pound.

Goldstein admitted hat he had "talked about nickel" with Barbera, and that his bill to Glaubman, which represented a sale of nickel, described the metal as "lead." When questioned in the early part of his cross-examination on the subject of whether there was any Government price restriction on nickel in December, 1952, he replied, "I don't believe there was any Government price at that time."

But every attempt to cross-examine Goldstein further on this crucial matter, and to introduce in evidence the Government price regulations in force at the time the contract was claimed by appellant to have been signed, was frustrated by objections of the prosecutor and adverse rulings by the trial judge. In the end, and after the whole subject had become hopelessly confused, appellant was permitted to elicit some testimony by Goldstein on the subject, but it was too late, and the Government price regulations were wholly ruled out.

There was endless discussion, some in the presence of the jury, some at the bench or in chambers.

For example:

"The Court: That leads to this, in effect. You say, Mr. Tompkins, that you are seeking to impeach Goldstein on the basis of some improper conduct relative to price control of metal, is that correct?

"Mr. Tompkins: Which is involved in this particular transaction, yes.

"The Court: How do you propose to prove that?

\* \* \* \* \* \*

"Mr. Tompkins: I will introduce the regulation, I will introduce an official of the Office of Price Stabilization who will say that at that time 76 cents, I think, was the amount, and that it was illegal to sell it at any price over that \* \* \*."

Later, the following occurred:

"Q. Was there a ceiling price, Mr. Goldstein, in December of 1952, on the price of nickel? A. Well, I will tell you. In that period we had a GPR."

Before the witness could complete his answer, the prosecutor objected "on the ground that this witness is not competent to testify to that, and on the ground that it is irrelevant, because his testimony has been that he entered into no transaction during that period." Extensive discussion ensued, the objection was sustained, and it would seem that, as Goldstein had testified that he signed no contract and had no transaction with Barbera, this was held to be a collateral

matter on which countervailing proof was not admissible, until the defense produced a witness to testify that the contract was made. The prosecutor was obsessed with the notion that, as Goldstein denied the transaction, there was no proof that such a contract was ever made, and that, in the absence of such proof, evidence of the Government price regulations on nickel had no foundation to rest upon. Indeed, the prosecutor characterized the efforts of appellant's counsel to prove the Government price regulations on nickel "as a smokescreen and as a tactic which is calculated to confuse the jury and take their deliberations from the issue at hand."

But the principal issue at hand was whether Goldstein had signed the contract, and, to attribute such significance to Goldstein's testimony that no contract was made was in effect to beg the very question at issue and shift the burden of proof from the prosecution to the defense.

■ As we view the matter, appellant was clearly entitled to prove out of Goldstein's own mouth that in December, 1952, to Goldstein's knowledge, Government price regulations were in force forbidding the sale of nickel at more than 76 cents a pound, and, if Goldstein categorically denied the existence of such Government price regulations, to prove by the regulations themselves and by a witness in charge of their enforcement that such regulations were in effect, from which the inference would have been inescapable that if, contrary to Goldstein's testimony and in accord with the testimony of appellant which is alleged to constitute perjury, the contract was signed by Goldstein, it would have been illegal.

■ Although a party may not cross-examine a witness on collateral matters in order to show that he is generally unworthy of belief and may not introduce extrinsic evidence for that purpose (other than records of certain convictions), 3 Wigmore, Evidence § 977 et seq., a party is not so limited in showing that the witness had a motive to falsify the testimony he has given. Thus, facts may

be shown from which it might be concluded that the witness favors the party for whom he has testified, as where a defense witness is shown to have lived with the defendant and borne him two children, People v. Payton, 36 Cal.App.2d 41, 96 P.2d 991; facts may be shown which may indicate that the witness is hostile to a party, as where, in a prosecution for attempting to bribe a police officer, the defendant was permitted to bring out that the officer had threatened to "get even" after the defendant had thrashed him following a charge by the defendant's wife that the officer had raped her, Greatreaks v. United States, 9 Cir., 211 F.2d 674; it is permissibe to show that the witness is financially interested in the outcome of the litigation, as where the witness may be required to indemnify the defendant, Southern Ry. Co. v. Bunnell, 138 Ala. 247, 36 So. 380; it may be shown that the witness is under indictment for the acts he has denied in his testimony, Terminal Transport Co. v. Foster, 5 Cir., 164 F.2d 248; and it is permissible to show that contrary testimony would subject the witness to criticism by his superiors, Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 207 F.2d 899, 904.

The above examples, which make plain the distinction between attacking credibility in general and showing a motive to falsify testimony as to a particular matter, are by no means exhaustive. As the court said in Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621, at page 627:

"Extrinsic testimony, or that elicited by cross examination to show the bias or interest of a witness in a cause, covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. Wigmore on Evidence, 3d Ed., §§ 948–949. The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only."

While it is true that there are circumstances of so little probative force on the

subject of a motive to falsify that they may be excluded in the discretion of the trial judge, that cannot be said to be the case before us. For, if Goldstein did sign the contract as appellant said he did, and if it was for an illegal purchase and sale of nickel in violation of the Government price regulations then in force, Goldstein would have a powerful motive to deny that he ever signed the contract or was a party to any such transaction. This is what appellant was trying to prove, and the evidence should have been received. It is wholly immaterial that the alleged contract was never consummated. And we think it is equally immaterial that the price regulations had lapsed or the Statute of Limitations had run before Goldstein testified at the trial of this case. The question is not whether Goldstein was guilty of an offense against federal law for which he might be prosecuted, but rather whether he had a motive to falsify his testimony by denying he had signed the contract.

Judge STEWART concurs in this opinion.