**UNITED STATES of America,**
**Appellee,**

v.

**Benjamin S. HAGGETT, Jr., Defendant-Appellant.**

**Nos. 726, 727, Dockets 33818, 34627.**

United States Court of Appeals,
Second Circuit.

Argued May 22, 1970.

Decided Jan. 26, 1971.

Certiorari Denied May 3, 1971.
See 91 S.Ct. 1638.

---

Tenney, District Judge, would dismiss indictment rather than reverse and remand for new trial below.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y. (William B. Gray, Gary P. Naftalis, Arthur A. Munisteri, Howard Wilson, Asst. U. S. Attys., of counsel), for appellee.

Owen & Turchin, New York City (Richard Owen, Morton J. Turchin, New York City, of counsel), for defendant-appellant.

Before SMITH and FEINBERG, Circuit Judges, and TENNEY,* District Judge.

TENNEY, District Judge:

Appellant, past Vice President of the Meadowbrook National Bank, in charge of specified Manhattan branches, appeals from a judgment of conviction entered in the United States District Court for the Southern District of New

---

* District Judge of the Southern District of New York, sitting by designation.

York upon a jury's verdict returned on May 28, 1968, finding him guilty on fifteen counts of misapplying funds of a federally insured bank in violation of 18 U.S.C. § 656, and on one count of conspiring to misapply said funds in violation of 18 U.S.C. § 371.

In a multi-faceted attack challenging his conviction below, appellant urges that: 1) the trial court erred in refusing to allow him to recall an allegedly critical prosecution witness; 2) it was error to exclude independent evidence that a prosecution witness attempted to suborn perjury; 3) the trial court was prejudicially hostile to appellant and his counsel and erroneously received certain opinion evidence at the trial; 4) evidence favorable to appellant was improperly excluded, while allegedly inadmissible evidence was received against him; and 5) his motion to dismiss for failure to prosecute should have been granted.

Since it is with appellant's second contention that we all agree, we consider that first.

At trial, a prosecution witness who is presently one of the Vice Presidents of the Meadowbrook National Bank, admitted that he reviewed the loans made by appellant while he was with the Bank, and that in 1962, when the Bank sued Haggett civilly, he was the officer who verified the complaint. It also appears that just prior to appellant's indictment in 1963, the same officer assisted the United States Attorney's office by locating and furnishing necessary papers and materials from the Bank. Further, it is alleged that in 1969 he and his assistants cooperated with the Government in its preparation of the case by searching for and producing other relevant documents.

During the trial, the bank officer testified that he had unsuccessfully looked for the credit checking cards for the loans charged as willful misapplications under Counts 16 through 21. Appellant, however, testified that he prepared these cards after making a credit investigation of the makers of the notes. The absence of these cards would of course, permit the inference that in fact they had not been prepared because the borrowers were a poor credit risk whose notes could not justifiably be discounted.

In order to discredit the bank representative's testimony both as to his knowledge of the existence of these cards and the diligence of his efforts to locate them, and in order to prove that his sole motive for testifying was to see Haggett convicted, appellant unsuccessfully attempted to call three witnesses to testify on his behalf.

These witnesses, two of whom were previously interviewed by defense counsel, allegedly would have testified that they were borrowers from the Bank and had previously dealt with Mr. Haggett in connection with their loans. It is further claimed that the witnesses would have testified that, after being interviewed by the bank representative, who failed to obtain any incriminating evidence against Haggett, he suggested that they perjure themselves by stating that Haggett demanded money from them before they could obtain their loans. In return for the perjured testimony, the witnesses were allegedly promised favored treatment from the Bank in connection with their loan balances then outstanding. Appellant claims that two of the witnesses would also have testified that this bank representative told them he was "out to get" Haggett and that he did not care how he did it.

On cross-examination, said representative responded negatively to defense counsel's inquiry as to whether he had attempted to suborn perjury of the three witnesses. When appellant sought to contradict this by offering the testimony of the witnesses, the Court refused to permit them to testify.

Apparently, the three witnesses were excluded on the basis of the trial court's conclusion that the proffered testimony would neither significantly weaken the Government's case nor be sufficiently probative to expose any bias relevant to the charges against Haggett. The trial

judge indicated that he was of the opinion that the alleged bias was irrelevant since it was intended to show the bank officer's general unreliability and not to develop any bias specifically related to the charges against the defendant.

It is with the above reasoning that we disagree. The testimony of a bank Vice-President, specifically assigned the task of investigating allegedly illegal loans, would not as suggested by the Government necessarily have been categorized by a jury as relating solely to ministerial acts. Nor is it certain that a jury would have considered his bias if proven irrelevant. That this alleged bias was not merely collateral is suggested by what appellant sought to prove; specifically, that this bank representative was willing to bribe the three witnesses to testify falsely in order to insure that the desired result was achieved. What is irrelevant, however, is the fact that the loans of these witnesses were not the subject of the indictment. It is the bank representative's alleged hostility as an officer of the defrauded Bank and alleged willingness to manufacture evidence in order to insure Haggett's conviction that defendant sought and was entitled to elicit from the testimony of his proffered witnesses. If these witnesses testified as indicated, and if such testimony were believed by the jury, reasonable doubt as to the veracity of other prosecution witnesses could certainly have arisen. Proof that one Government witness unsuccessfully attempted to suborn perjury of other witnesses could have led a jury to doubt the veracity of other Government witnesses—the jury perhaps suspecting that these witnesses were successfully bribed to testify falsely. Of course, this possibility is magnified when the witness charged with attempting subornation is an officer of the party allegedly defrauded; that is, it would not be unreasonable for the jury to suspect that other witnesses who testified as to the misapplication of funds from the Bank were persuaded by the Bank, through its officers, to testify in an other than truthful manner. Of course, by our statement of possible inferences, we mean to express no view as to the accuracy of defendant's claim regarding the bank officer.

As previously stated by Judge Medina of this Court in United States v. Lester, 248 F.2d 329, 334 (2d Cir. 1957), "[a]lthough a party may not cross examine a witness on collateral matters in order to show that he is generally unworthy of belief and may not introduce extrinsic evidence for that purpose * * * a party is not so limited in showing that the witness had a motive to falsify the testimony he has given." Thus, "bias or interest of a witness is not a collateral issue, and * * * extrinsic evidence is admissible thereon." United States v. Battaglia, 394 F.2d 304, 314 n. 7 (7th Cir. 1968).

Of course, there is no litmus test method to determine whether extrinsic evidence should be admitted to prove that a witness had a motive to testify falsely as to a particular matter, but a defendant should be afforded the opportunity to present facts which, if believed, could lead to the conclusion that a witness who has testified against him either favored the prosecution or was hostile to the defendant. United States v. Lester, *supra* 248 F.2d at 334. Evidence of all facts and circumstances which "tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only," should be received. Majestic v. Louisville & N. R. Co., 147 F.2d 621, 627 (6th Cir. 1945).

Persuasive authority from New York State's appellate courts also suggests that it was error to exclude the three witnesses. It is well established that once a proper foundation has been laid, a party should be permitted to discredit the testimony of one of his adversary's witnesses by showing that on other occasions that witness has made statements inconsistent with his trial testimony. Larkin v. Nassau Elec. R.R. Co., 205 N. Y. 267, 98 N.E. 465 (1912); Joseph v.

Griesman Trucking Co., 265 App.Div. 590, 40 N.Y.S.2d 200 (1943). J. Prince, Richardson on Evidence § 513, at 517–18 (9th ed. 1964). It is equally well settled that a "witness' bias in favor of the party calling him, or his hostility to the party against whom he testifies, may be shown to affect his credibility." J. Prince, *supra* § 515 at 522; accord, People v. Webster, 139 N.Y. 73, 85, 34 N.E. 730, 733 (1893). Thus, after the bank officer denied any attempt to suborn perjury, independent evidence should have been received both in order to contradict this statement and to show his alleged hostility to the defendant. It was error for the trial court not to permit these witnesses to come forth and tell the court and jury that said officer tried to bribe them to give false testimony because he was "out to get" Haggett and didn't care how he did it. This is especially true since a witness' hostility may be proved by any competent evidence: "[i]t may be shown by cross-examination of the witness, or witnesses may be called who can swear to facts showing it." People v. Brooks, 131 N.Y. 321, 325, 30 N.E. 189, 190 (1892).[1] The reason, of course, for allowing a defendant to introduce extrinsic evidence as to a witness' attempt to suborn perjury is that such conduct indicates a corrupt intent on the part of that witness which necessarily affects his credibility. 3A J. Wigmore, Wigmore on Evidence § 960 at 805 (Chadbourne rev. 1970). Although we are mindful that it is within the sound discretion of the trial judge to determine the extent to which he will receive independent evidence for the purpose of proving a witness' hostility, we do not believe that he may as was done below, exclude all such evidence for that purpose. People v. McDowell, 9 N.Y.2d 12, 210 N.Y.S.2d 514, 172 N.E.2d 279 (1961); see People v. Lustig, 206 N.Y. 162, 172, 99 N.E. 183, 186 (1912).

Although the holding that error was thus committed requires a new trial, the writer of this opinion notes that in view of the approximately six-year delay between appellant's indictment and trial, he would not reach the issue determined herein, although he is in full agreement with such determination.

■ The indictment herein was returned on September 20, 1963, but was not tried until April of 1969. Approximately one year prior to trial and again at the close of the trial, Haggett unsuccessfully moved under the Sixth Amendment to the United States Constitution and pursuant to Fed.R.Crim.P. 48(b) to dismiss the indictment on the grounds that he was denied his constitutional right to a speedy trial and that there was unnecessary delay in bringing him to trial.

Despite the nearly six-year delay, my colleagues feel that under the authorities presently in effect in this Circuit they have no choice but to rule that because of appellant's failure to demand a speedy trial before the initial motion to dismiss, he has waived his right thereto. United States v. Parrott, 425 F.2d 972, 976 (2d Cir. 1970); United States v. Aberson, 419 F.2d 820, 821 (2d Cir. 1970); United States v. Roberts, 408 F.2d 360, 361 (2d Cir. 1969) (per curiam); United States v. Maxwell, 383 F.2d 437, 441 (2d Cir. 1967), cert. denied, 389 U.S. 1043, 88 S.Ct. 786, 19 L.Ed.2d 835 (1968); United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). Understandably, the Government has taken a similar position.

As for the one-year time lapse between the initial motion to dismiss and the trial, the Government in substance claims that appellant acquiesced to numerous adjournments of the motion, and that other internal judicial matters were

---

1. It is similarly noted in 3A J. Wigmore, Wigmore on Evidence § 1005 at 969 (Chadbourne rev. 1970), that bias and corruption (*e. g.*, hostility and alleged attempts to suborn perjury) may be proven by extrinsic evidence and proof of either should be admitted for the purpose of contradicting a witness' testimony.

partially responsible for the remainder of the delay.

I am unpersuaded by both the Government's and my colleagues' position. The delay was patently too long and no reasonable excuse has been offered therefor. Moreover, in view of the length of the delay (between indictment and trial), and the undisputed fact that two alleged defense witnesses died in 1968 prior to trial, the prejudice resulting from the delay is not only manifest but also may be presumed. United States v. Lustman, *supra* 258 F.2d at 478; United States v. Blanca Perez, 310 F.Supp. 550 (S.D.N.Y.1970); United States v. Chin, 306 F.Supp. 397 (S.D.N.Y.1969); United States v. Mann, 291 F. Supp. 268 (S.D.N.Y.1968). "Where delay is as long and as groundless as that revealed here, prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increased with the passing months and years. * * *" United States v. Mann, *supra* at 271.

In sum we have a situation wherein there has been an inexcusably long delay resulting in prejudice to the appellant. Under these circumstances, the Government should not be permitted to re-try a stale indictment which has regrettably been left undisturbed simply because it was convenient to permit it to remain in a state of suspension as long as the defendant did not demand a speedy trial. As I have recently indicated, "once a defendant has been demonstrably prejudiced by an inexcusably long delay occasioned by the prosecution, it would seem naive and insensible to suggest that because he has not affirmatively moved for a speedy trial he has impliedly waived his right thereto. Compare Klopfer v. North Carolina, 386 U.S. 213, 226, [87 S.Ct. 988, 18 L.Ed.2d 1] (1967) with Aetna Ins. Co. v. Kennedy [ex rel. Bogash], 301 U.S. 389, 393 [57 S.Ct. 809, 81 L.Ed. 1177] (1937) and Johnson v. Zerbst, 304 U.S. 458, 464, [58 S.Ct. 1019, 82 L.Ed. 1461] (1938). It would seem beyond the pale of 'fair play,' and

repugnant to the Fifth Amendment requirements of due process, to find that a defendant has waived his right to a speedy trial, even though disadvantaged by the prosecution's unjustified delay, simply because he has not taken the 'relatively unlikely step of demanding an early trial.' See United States v. Mann, *supra* [291 F.Supp.] at 274. Any attempt to 'saddle' a defendant to an implied waiver under such circumstances must fall of its own weight under the defendant's more basic constitutional right to be tried fairly in accordance with due process of law. It is unimaginable, even under the most narrow view of the Fifth Amendment requirements of due process, that a trial conducted in the face of existing prejudice to the defendant, caused by the Government's unjustified delay in prosecution, could be constitutionally permissible." United States v. Stone, 319 F.Supp. 364 (S.D.N.Y.1970).

For the foregoing reasons, I would dismiss the indictment rather than reverse and remand for a new trial below.

Reversed and remanded.