Irving W. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 13528.

District of Columbia Court of Appeals.

Argued Oct. 24, 1979.
Decided July 25, 1980.

Charles W. Halleck, Washington, D. C., appointed by this court, for appellant.

Genevieve Holm, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Michael W. Farrell, and Mary-Elizabeth Medaglia, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and HARRIS, Associate Judges.

NEWMAN, Chief Judge:

■ Appellant was charged in a multicount indictment with the offenses of first-degree armed burglary, armed robbery and related offenses occurring on November 21, 1976, as well as with counts of armed robbery and related offenses occurring on November 22, 1976. The trial court granted appellant's motion to sever the counts, and separate jury trials resulted in his conviction of first-degree burglary while armed and armed robbery in the November 21 incident and of armed robbery in the November 22 incident. On this appeal from the convictions at both trials, appellant raises a number of contentions, only one of which we find calls for extensive consideration. This is his contention that his Sixth Amendment right of confrontation was violated during his trial for the November 22 armed robbery when the trial court refused to strike the direct testimony of Martha Ellis, upon motion, after the witness had invoked her Fifth Amendment privilege against self-incrimination on several occasions during cross-examination.[1] In Part I of this opinion, we set forth the pertinent facts from appellant's trial for the November 22 armed robbery. In Part II, we address appellant's main legal contentions as to the November 22 robbery and hold that the trial court committed reversible error in failing to preserve appellant's right of confrontation. We affirm appellant's conviction for the November 21 robbery.

I

The prosecution's evidence showed that appellant, armed with a sawed-off shotgun

1. Appellant presents two further issues for our consideration. First, appellant contends that at his trial for the November 22 robbery, he should have been allowed to call as a defense witness one Jerry Jones. Mr. Jones would have testified that he had purchased marijuana from the prosecution's witness, Martha Ellis, at some time prior to the robbery. We fail to perceive how this evidence would have implicated Ms. Ellis' bias against appellant or her motive to fabricate a story about the incident. Rather, the evidence would have merely called into question Ms. Ellis' general credibility. Generally, a party is bound by a witness' answer on cross-examination with respect to collateral matters, such as general credibility, and may not introduce extrinsic evidence to contradict the testimony. The trial judge in the instant case properly exercised his discretion in refusing to allow Mr. Jones to testify. *See Tinker v. United States*, 135 U.S.App.D.C. 125, 417 F.2d 542, *cert. denied*, 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969).

Appellant also contends that at his trial for the robbery of November 21, 1976, the prosecutor's closing argument to the jury impermissibly referred to appellant's failure to testify, thereby violating his Fifth Amendment right. Timely objection was made by defense counsel. This issue is governed by the two-prong test adopted in *Peoples v. United States*, D.C.App., 329 A.2d 446, 450 (1974). *See Wright v. United States*, D.C.App., 387 A.2d 582 (1978); *Brown v. United States*, D.C.App., 383 A.2d 1082, 1085 (1978). Evaluating the comments of the prosecutor in context and applying the *Peoples* rule, we affirm the trial court's finding of no impropriety on the part of the prosecution.

and accompanied by two others, forced his way into Martha Ellis' apartment and robbed her at gunpoint of some money and a small quantity of marijuana. Present in the apartment at the time of the robbery were Ms. Ellis, several children, and a visitor, Mr. Eugene Plummer. Another resident of the apartment, Mr. James Milton Blue, was downstairs at the time of the forced entry but returned to the apartment door during the incident and later saw the three intruders leave. Ms. Ellis, Mr. Plummer, and Mr. Blue all testified to the incident and identified the appellant.

The defense theory was that the charges had been fabricated in revenge for appellant's failure to pay for some marijuana he had obtained from Milton Blue and/or Martha Ellis. Defense witnesses represented the incident as having simply been an unarmed visit by appellant to the apartment Ms. Ellis and Mr. Blue shared to resolve the claim Mr. Blue purportedly had against him.

Police photographs showed, and Ms. Ellis and Mr. Blue admitted, that marijuana was being grown in their apartment at the time of the robbery. When appellant's counsel asked Ms. Ellis during cross-examination whether she or Milton Blue had ever sold marijuana to appellant in the several months preceding the robbery, she asserted her privilege against self-incrimination and declined to answer. The trial court sustained her invocation of the privilege.

Appellant moved to strike Ms. Ellis' direct testimony following her invocation of her Fifth Amendment privilege on cross-examination.[2] The trial court held that the testimony sought was collateral and went to the witness' general credibility, not to the substance of her testimony on direct.

Appellant otherwise had full cross-examination as to Ms. Ellis' version of the events, including Ms. Ellis' previous acquaintance with him (appellant had visited the Ellis-Blue apartment on three or four previous occasions), and the source of the stolen marijuana and the potted marijuana plants in her apartment. Milton Blue never asserted his Fifth Amendment privilege during cross-examination and denied ever engaging in a marijuana transaction with appellant.

II

Appellant's primary contention on appeal is that, by refusing to strike the direct testimony of witness Martha Ellis, upon motion, after she had invoked the Fifth Amendment on several occasions during cross-examination, the trial court violated his Sixth Amendment right to confrontation.

The opportunity for a defendant to cross-examine a witness is a matter of right. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); *Alford v. United States*, 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931); *Springer v. United States*, D.C.App., 388 A.2d 846, 854 (1978). It is improper for a trial court to cut off "*in limine* all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination."

2. The pertinent part of the transcript reads:
   Q. [DEFENSE COUNSEL]: Has [appellant] ever come up there and bought any marijuana from you or Milton?
   A. I would take the fifth on that.
   [GOVERNMENT]: Objection as to time.
   [DEFENSE COUNSEL]: Just a minute. She just said she claims the fifth amendment. I will honor that.
   Q. [DEFENSE COUNSEL]: Do you claim your privilege under the fifth amendment not to incriminate yourself?
   A. Yes, I do. [Tr. 353–54]
   After a lengthy bench conference, the trial court allowed further questioning by defense counsel.
   Q. Was there any marijuana or any drugs sold by anybody up there to Mr. Johnson in the month of October, 1976?
   A. I will take the fifth.
   Q. In the month of November?
   A. I will also take the fifth.
   Q. And August and September of 1976?
   A. I will take the fifth.
   [THE COURT]: Counsel, approach the bench. [Tr. 357]
   The court then directed counsel to terminate that line of questioning [Tr. 358]. Counsel thereafter continued his cross-examination of Ms. Ellis.

*Alford v. United States, supra* at 694, 51 S.Ct. at 220. However, "when a conflict arises between a witness' proper exercise of his Fifth Amendment privilege against self-incrimination and the defendant's right to confront witnesses, a proper balance must be struck." *United States v. Gould,* 536 F.2d 216, 222 (8th Cir. 1976). *See Alford v. United States, supra* 282 U.S. at 694, 51 S.Ct. at 220.

■ "Some meaningful degree of cross-examination must be allowed in the first instance in order to comply with the Sixth Amendment's command in this regard." *Springer v. United States, supra* at 854. Where, as here, a defendant seeks to have a witness' direct testimony stricken because cross-examination of the witness was restricted, the issue is committed to the discretion of the trial court to be exercised pursuant to appropriate legal standards. *United States v. Cardillo,* 316 F.2d 606 (2d Cir. 1963); *United States v. Star,* 470 F.2d 1214, 1217–18 (9th Cir. 1972); *Coil v. United States,* 343 F.2d 573 (8th Cir.), *cert. denied,* 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965). The crucial consideration for the trial court is whether a witness' claim of Fifth Amendment privilege precludes cross-examination of that witness concerning his or her testimony bearing upon the substantive offense or offenses, as distinguished from subsidiary or subordinate matters. *See United States v. Cardillo, supra* at 611. If cross-examination is so precluded, the testimony must be stricken in relevant part. *Id.* Furthermore, since "the line between 'direct' and 'collateral' is not clear, . . . the question in each case must finally be whether defendant's inability to make the inquiry created *a substantial degree of prejudice* by depriving him of the ability to test the truth of the witness' direct testimony." *Fountain v. United States,* 384 F.2d 624, 628 (5th Cir. 1967), *cert. denied sub nom. Marshall v. United States,* 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968) (emphasis added).

■ The cross-examination of a witness, or presentation of evidence, as to his or her bias or motive is a more particular-ized, and potentially more damaging, way of calling into question a witness' credibility, *Davis v. Alaska, supra* 415 U.S. at 316, 94 S.Ct. at 1110; *Springer v. United States, supra* at 855; *Johnson v. Brewer,* 521 F.2d 556, 561 (8th Cir. 1975), quoting *Davis v. Alaska, supra* 415 U.S. at 316, 94 S.Ct. at 1110; *United States v. Haggett,* 438 F.2d 396, 399 (2d Cir.), *cert. denied,* 402 U.S. 946, 91 S.Ct. 1638, 29 L.Ed.2d 115 (1971), citing *People v. Brooks,* 131 N.Y. 321, 325, 30 N.E. 189, 190 (1892). *See also United States v. Hodnett,* 537 F.2d 828 (5th Cir. 1976). As appellant correctly asserts, extrinsic evidence may always be introduced to show bias and motive, *United States v. Robinson,* 174 U.S.App.D.C. 224, 227, 530 F.2d 1076, 1079 (1976); *Villaroman v. United States,* 87 U.S.App.D.C. 240, 184 F.2d 261 (1950), for the "bias or interest of a witness is not a collateral issue." *United States v. Battaglia,* 394 F.2d 304, 314 n.7 (7th Cir. 1968), *vacated and remanded on other grounds,* 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); *United States v. Haggett, supra* at 399 (citing *Battaglia*); *United States v. Lester,* 248 F.2d 329, 334–35 (2d Cir. 1957). However, simply because a defendant is allowed greater scope in questioning a witness as to his bias and motive than with respect to his general credibility, and need not merely accept a witness' answers to these questions but may introduce extrinsic evidence contradicting them, *United States v. Battaglia, supra* at 314 n.7, it does not follow that therefore *any* restriction of cross-examination of a witness pertaining to bias or motive must automatically necessitate the striking of that witness' direct testimony. While the complete preclusion of cross-examination of a witness as to his bias or motive for testifying (assuming an appropriate proffer) is a clear denial of a defendant's Sixth Amendment confrontation right, *Springer v. United States, supra* at 854–57, anything less presents the issue of "whether defense counsel had an opportunity to [adequately] bring out considerations relevant to motive or bias." *United States v. Mahler,* 363 F.2d 673, 677 (2d Cir. 1966). *See United States v. Harvey,* 547 F.2d 720, 723 (2d Cir. 1976). Where "the

subject matter of the answer [on cross-examination] is connected with only one phase of the government's case, the proper response is to cause a *partial striking* of the witness's direct testimony." *United States v. Newman*, 490 F.2d 139, 146 (3d Cir. 1974) (explicating *Cardillo*) (defendant's alleged partner in illegal wiretap business repeatedly claimed Fifth Amendment privilege on cross-examination with respect to questions designed to show that, because he also had operated independently, it was not necessarily clear that defendant had been involved with the criminal activity with which he was charged). *See also United States v. Demchak*, 545 F.2d 1029 (5th Cir. 1977) (where cross-examination of father, testifying against son in trial for violation of federal narcotics law, was so narrowly limited, due to Fifth Amendment self-incrimination considerations, as to effectively cut off cross-examination concerning the very activity about which the father and son had conspired, held: the testimony of the father on direct must be struck).

In the present case, as in *United States v. Demchak, United States v. Newman*, and *United States v. Lester*, the cross-examination of the key prosecution witness by the defendant was cut off *in limine* with respect to a crucial line of questioning concerning the witness' bias or motive to testify. Martha Ellis was the complainant and one of only two witnesses to observe the incident in question in its entirety. Her testimony was of crucial, and perhaps determinative, importance to the prosecution's case. As there was no question that appellant had been present at the time the confrontation between himself and Martha Ellis took place, the only issue to be decided was the nature of that confrontation: whether it was an armed robbery, as Ms. Ellis claimed, or whether it was merely an unarmed visit, as appellant suggested.

Through his cross-examination of Ms. Ellis, defense counsel attempted to elicit testimony as to whether appellant has purchased any marijuana from the witness or from her boyfriend and roommate, James Milton Blue, in the several months preceding the alleged robbery. In particular, defense counsel was interested in whether appellant had ever purchased a large quantity of the substance and then failed to pay for it. From such testimony counsel would then have sought to convince the jury that Ms. Ellis and Mr. Blue had subsequently called in the police on the pretext that an armed robbery had taken place in order to utilize the system of justice as an instrument of retaliation against appellant for having failed to pay for the supply of marijuana he had received from them. However, when defense counsel attempted to cross-examine Ms. Ellis along this line, the witness repeatedly invoked her Fifth Amendment privilege against self-incrimination. *See* text, *supra* note 2. By reason of Ms. Ellis' continuing refusal to answer questions concerning whether she or Milton Blue had ever sold marijuana to him, appellant was effectively precluded from examining the witness as to a motive she may have had for testifying against him.

While appellant possessed, and fully exercised, a right to present extrinsic evidence in support of his theory, he also had an unquestioned right to develop his case through cross-examination of the government's witnesses, for there could be nothing more basic to appellant's attempt to demonstrate from her own testimony that Ms. Ellis did indeed have a very strong motive for being hostile towards and testifying against him. *Davis v. Alaska; United States v. Harvey; United States v. Hodnett; Johnson v. Brewer; United States v. Haggett; United States v. Lester*. Without such evidence before the jury, they would not be in possession of a sufficient amount of information concerning formative events to allow them to make a "discriminating appraisal", *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir.), *cert. denied*, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972), quoting *United States v. Campbell*, 426 F.2d 547, 550 (2d Cir. 1970), of the witness' motive and bias. It is clear, therefore, that there is a serious danger that appellant suffered a substantial, perhaps irreparable, degree of prejudice with respect to his at-

tempt to establish Ms. Ellis' motive, interest or bias.

Accordingly, we hold that the trial court erred in refusing to grant appellant's motion to strike the direct testimony of Martha Ellis in its entirety. We reverse the judgment of the lower court with respect to appellant's conviction for the alleged armed robbery of November 22 and remand for a new trial. The judgment of conviction as to the November 21 robbery is affirmed.[3]

*Reversed and remanded.*