Alvin BETHEA, Appellant,

v.

UNITED STATES, Appellee.

No. 90–215.

District of Columbia Court of Appeals.

Argued May 6, 1991.
Decided May 9, 1991.*

Daniel J. McGuan, Rockville, Md., appointed by the court, for appellant.

David H. Baum, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, and Patricia M. Haynes, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

PER CURIAM:

This appeal from appellant's conviction on one count of distribution of cocaine (D.C.Code § 33–541(a)(1) (1981)) presents the issue of whether the trial judge properly sustained a claim of Fifth Amendment privilege asserted by a witness whom the defendant sought to call in his behalf. The judge found that although the proffered direct examination of the witness by appellant's counsel would not subject the witness to a realistic danger of self-incrimination, cross-examination by the prosecutor about events closely related in time and significance to the events about which the witness proposed to testify would create the requisite appreciable risk of self-incrimination. The court therefore sustained the witness's blanket assertion of the privilege. We affirm.

I.

The government's evidence at trial showed that Sergeant Linda Johnson and Officer Theresa Coleman of the Metropolitan Police Department, on plain clothes patrol, were approached by a woman who asked them if they were "looking." After Johnson stated that she wanted "one rock" of crack cocaine, the woman led the officers to an apartment building where she told appellant, who was standing inside, that Johnson was looking for "rock." Appellant pulled from his pocket a safety pin that held six small plastic bags containing a white rock substance; Johnson selected the bag she wanted and handed appellant a twenty-dollar bill. Johnson and Coleman then returned to their car and radioed a description of appellant to the arrest team. They were instructed by their supervisor, however, to return to the apartment building and engage appellant in another transaction to divert his attention while the arrest team moved toward him through the open courtyard in front of the building.

---

* The decision in this case was originally issued as a Memorandum Opinion and Judgment. It is now being published by direction of the court.

The officers returned to the building and found appellant in the same location. As he was in the process of selling them another bag containing the white substance, someone nearby yelled "police" and appellant fled into an adjoining apartment. Minutes later he was found seated on the toilet in a bathroom of the apartment. Johnson identified him as the seller, and the substance she purchased from him was determined to be cocaine.

## II.

Before trial appellant's counsel announced his intent to call as a defense witness Regina Wanzor, who was prepared to testify that, at the time and place in question, she met two women on the street (presumably the two police officers) who informed her they were selling baby clothes, and that she took them to several places to help them sell the clothing. One of those places was the apartment building in question, where they encountered a male and female in the vestibule. As the group began talking about a sale of baby clothes, Ms. Wanzor left. According to defense counsel's proffer, Wanzor would testify that she knew appellant and that the man in the vestibule was not appellant. In turn, the prosecutor proffered that the two police officers would testify that Wanzor was the person who had led them to appellant for the first drug purchase, and that as they returned to the scene minutes later, she again approached them and attempted either to sell them narcotics herself or to lead them to another seller.

In view of the apparent Fifth Amendment problem thus presented, the trial judge appointed counsel to represent the witness, and there followed a lengthy colloquy between the parties and a *voir dire* in which the judge sought to establish wheth-

er Wanzor's testimony would expose her to a substantial risk of self-incrimination. On appeal, appellant makes no challenge to the procedures followed meticulously by the judge in deciding the Fifth Amendment issue. *See Wilson v. United States*, 558 A.2d 1135 (D.C.1989). Rather, the issue in the trial court came down to whether, assuming that direct and cross-examination of the witness concerning only the first incident—her initially leading the officers to appellant—would not expose her to self-incrimination, proper cross-examination by the prosecutor about her approaching the officers minutes later when they returned to the scene might reasonably tend to incriminate her. Upon the advice of counsel, Ms. Wanzor asserted her Fifth Amendment privilege with respect to any questioning about these subsequent events.[1] The trial judge, after ascertaining that the government would not forego prosecution of the witness (for attempted distribution) based upon any testimony she might give about these events, ruled that Wanzor had a valid claim of self-incrimination respecting events about which the government had demonstrated a legitimate need to cross-examine her if she took the stand. Since the witness would not submit to that cross-examination, the court sustained her refusal to testify at all.

We find no error in this determination. As noted, the judge was careful in adhering to the procedures established by this court for determining whether a witness has a valid Fifth Amendment privilege.[2] On appeal, appellant argues that the proposed cross-examination by the government into the second encounter "occurr[ing] 15 to 20 minutes after the event relevant to the trial ... had no bearing substantively on the trial case," or at least had insufficient relevance to justify keeping Wanzor from the witness stand, given

1. During repeated *voir dire,* Ms. Wanzor also invoked her Fifth Amendment privilege as to a question concerning the first encounter, *i.e.,* whether the two women had approached her and asked her if she knew where they could get "rock."

2. The judge held two separate hearings to determine whether Ms. Wanzor could validly invoke a Fifth Amendment privilege. Her attorney was present and consulted by the judge at each step of the proceedings, as was defense counsel. Moreover, when defense counsel doubted the veracity of the government's proof regarding Officer Coleman's recognition of Ms. Wanzor as the person the police had twice encountered, the judge required Coleman to testify under oath about this matter to insure that there was a sound basis for accepting the proffer.

the cross-examination the government could still conduct regarding the first encounter.[3] The argument is unpersuasive. Ms. Wanzor's expected testimony on direct, established by proffer and *voir dire*, was that she led the two women (not knowing they were police) inside the building to help them sell baby clothes, and that they encountered a man there who was not appellant. Indeed, she denied on *voir dire* that she had seen appellant at all that day. This testimony was offered to directly counter the testimony of the officers that a woman (who they were prepared to state was Wanzor) led them into the building specifically to buy drugs from appellant.[4] Obviously, testimony by Wanzor that minutes later she had approached the officers a second time and offered to sell them drugs herself or take them to another buyer would challenge the veracity of her testimony about the benign sale of baby clothes, and the fact that she had not seen appellant. *See Sherer v. United States*, 470 A.2d 732, 738 (D.C.1983) (witness may be cross-examined on prior bad act not resulting in conviction where examiner has factual predicate for question and bad act bears directly upon veracity of witness in respect to issues involved in trial). Such cross-examination, at least on facts evincing such temporal proximity as shown here, could not be deemed collateral. *See Scull v. United States*, 564 A.2d 1161, 1165 (D.C.1989) (alleged bias or unreliability of witness never collateral issue, and thus always proper subject for cross-examination);

*Johnson v. United States*, 418 A.2d 136, 140 (D.C.1980).[5]

As in *Letsinger v. United States*, 402 A.2d 411 (D.C.1979), therefore, the events about which Wanzor proposed to testify and the events about which the government legitimately would seek to cross-examine her were "so intertwined" that waiver of the privilege as to the former necessarily would include the latter. *Id.* at 416; *see also Johnson, supra*, 418 A.2d at 141–42. The judge did not err in sustaining the witness's blanket assertion of the privilege.[6]

Accordingly, the judgment of the Superior Court is

*Affirmed.*

3. Appellant disputes, almost parenthetically, the sufficiency of the government's proffer that Coleman and Johnson would identify Wanzor as the person they had encountered on their return to the scene, pointing to testimony by Johnson on cross-examination during the first trial in this case which had ended in a mistrial. The testimony cited, however, is ambiguous; read together with Johnson's direct testimony in the first trial, it tends to suggest merely that Johnson had not seen Wanzor still another time that day after the two encounters. At the second trial Johnson testified exactly to that effect ("I saw her a second time when I returned to the area. After the subject [appellant] was arrested, we did not see her any more").

4. As noted previously, *supra* note 1, Wanzor also refused, on Fifth Amendment grounds, to

be cross-examined about the reason she led the two women to appellant.

5. Since Wanzor was a proffered witness and not a defendant, no issue is presented concerning the admission for substantive purposes of other crimes evidence.

6. In other words, unlike our recent decision in *Collins v. United States*, 596 A.2d 489 (D.C.1991), this is not a case where "[t]he trial court could have effectively narrowed the scope of [the witness'] testimony and cross-examination to ... unprivileged matters." At 492.