Joseph LIU, Plaintiff,

v.

REAL ESTATE INVESTMENT GROUP,
INC., Simon S. Milne, Martin Ender,
Max R. Weiss, Stanley Z. Want, Ken-
neth Pelsinger, 6209–15 Boulevard East
Corp., Creative Capital Group, Eric
Kaufman and Joan Kaufman, Defen-
dants.

Pablo A. POBLETE, Plaintiff,

v.

REAL ESTATE INVESTMENT GROUP,
INC., Simon S. Milne, Martin Ender,
Max R. Weiss, Stanley Z. Want, Ken-
neth Pelsinger, 6209–15 Boulevard East
Corp., Creative Capital Group, Eric
Kaufman and Joan Kaufman, Defen-
dants.

Jenny W. LUM and Samson
Lum, Plaintiffs,

v.

REAL ESTATE INVESTMENT GROUP,
INC., Simon S. Milne, Martin Ender,
Max R. Weiss, Stanley Z. Want, Ken-
neth Pelsinger, 6209–15 Boulevard East
Corp., Creative Capital Group, Eric
Kaufman and Joan Kaufman, Defen-
dants.

Nos. 90 Civ. 7751 (RPP), 90 Civ. 7753
(RPP) and 90 Civ. 7754 (RPP).

United States District Court,
S.D. New York.

Aug. 19, 1991.

Realmuto & D'Alessio, New York City by Richard Realmuto, for plaintiffs.

Max Markus Katz, New York City by Max Marcus Katz, for Real Estate Inv. Group, Inc., Martin Ender, Max R. Weiss, Stanley Want and Kenneth Pelsinger.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

These are identical actions alleging misrepresentations and omissions in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and common law fraud in connection with the sale of cooperative apartments to plaintiffs. Defendants Real Estate Investment Group ("REIG"), Martin Ender ("Ender"), Max R. Weiss ("Weiss"), Stanley Want ("Want") and Kenneth Pelsinger ("Pelsinger") move to disqualify plaintiffs' attorneys on the ground that they have breached confidences and otherwise engaged in improper conduct in prosecuting this action in violation of the Code of Professional Responsibility ("the Code"). For the reasons set forth below, defendants' motions are granted.

## BACKGROUND

Sometime prior to August 1988, defendants Weiss, Ender, Want and Simon Milne ("Milne") formed a New Jersey corporation known as Real Estate Investment Group, Inc. ("REIG"). REIG purchased eighteen cooperative apartments located in West New York, New Jersey from 6209–15 Boulevard East Corporation ("6209"). Defendants Eric and Joan Kaufman ("the Kaufman defendants"), both principals in 6209, were the co-op sponsors from whom the apartments were purchased. After their purchase, REIG offered the apartments for sale to investors.

Weiss has served as Joseph Liu's ("Liu") and Jenny and Samson Lum's personal accountant since 1984. Liu Aff. ¶ 3; Lum Aff. ¶ 3.[1] Weiss has served as plaintiffs Pablo Poblete's ("Poblete") personal accountant since at least 1989. Poblete Aff. ¶ 3. In August 1988 Weiss recommended that plaintiffs invest in the cooperative apartments REIG had purchased. Liu Aff. ¶¶ 3–6. Weiss allegedly also recommended plaintiffs to Kenneth Pelsinger ("Pelsinger"), an attorney, who ultimately acted as plaintiffs' mortgage broker and represent-

---

1. The supporting and opposition briefs and affidavits are substantially identical in all three actions. For convenience, documents filed in *Liu v. Real Estate Inv. Group, Inc. et al.* will be cited in this opinion unless otherwise indicated.

ed plaintiffs at their closings. Liu Aff. ¶¶ 13, 15. Plaintiffs purchased two apartment[2] apiece, allegedly sight unseen, and closed in March 1989. Liu Aff. ¶¶ 8, 12, 16.

In mid–1989 or early spring 1990, plaintiffs contacted Weiss to express dissatisfaction with aspects of their purchase and to inquire as to how they might be relieved from its obligations. Weiss Aff. ¶ 7; Liu Aff. ¶ 20. Plaintiffs allege that the maintenance fees were higher than originally quoted to them and that "major renovations" were necessary. Liu ¶¶ 12, 19. Plaintiffs claim Weiss blamed the misrepresentations on the Kaufman defendants and also expressed dissatisfaction with his former associates Ender and Want. Liu Aff. ¶¶ 20, 25.

Because Weiss had in the past referred clients to the law firm of Realmuto and D'Alessio ("R & D"), Weiss Aff. ¶ 9 n. 5, he contacted R & D on plaintiffs' behalf. Weiss claims he also sought to explore avenues for bringing an action on behalf of himself and REIG against the Kaufman defendants, 6209 and another entity, Creative Capital Group. *Id.* ¶¶ 3(b), 9.

A series of discussions ensued involving Weiss, R & D, plaintiffs and various defendants. The first meeting was held April 2, 1990 at the law offices of R & D. Weiss, Richard Realmuto ("Realmuto"), Matthew D'Alessio ("D'Alessio") and all four plaintiffs attended. Weiss claims the discussion that day centered on the possibility of plaintiffs voiding their mortgages and potential claims against them by the bank which held the mortgages. Weiss Aff. ¶¶ 10–11. Weiss claims he also raised questions regarding actions by the Kaufman defendants in the sale of apartments to REIG. *Id.*

Weiss claims he disclosed his potential conflict of interest to Realmuto and D'Alessio up front but that he received assurances that any information he provided

would be kept confidential[3] and that he would not be named as a defendant in any future action by plaintiffs. Weiss Aff. ¶¶ 9, 13, 14. Realmuto and D'Alessio deny ever having given Weiss any such assurances. Realmuto Aff. ¶ 8; D'Alessio Aff. ¶ 8. Realmuto claims that after reviewing the matter, he advised Weiss that Weiss was subject to a lawsuit but that Weiss insisted on continuing to be involved in the meetings based on "his obligation and duty as the longtime accountant" for plaintiffs. Realmuto Aff. ¶¶ 9, 10.

After the April 2, 1990 meeting Weiss provided R & D with documents, allegedly at the attorneys' request, including plaintiffs' sales contracts, REIG's underlying contract with 6209, the prospectus, assignment agreements, amendments of the offering and copies of loan documents. Weiss Aff. ¶ 13.

On May 7, 1990 Realmuto and D'Alessio held a second meeting involving Weiss and the plaintiffs. Weiss claims they further discussed plaintiffs' mortgages and actions taken by the Kaufman defendants. Weiss Aff. ¶ 13.

On May 17, 1990 R & D held a third and final meeting attended by Weiss, Pelsinger, Ender and Want. Weiss claims that at this meeting he explained the "inside nature" of the transactions from the defendants' viewpoint. Weiss Aff. ¶ 15. Realmuto then informed Pelsinger, Ender, Want and Weiss that plaintiffs would file suit against them if no settlement could be reached. Realmuto Aff. ¶ 16.

In November 1990 plaintiffs filed separate complaints alleging that defendants knowingly made false and misleading statements and omissions to plaintiffs concerning the co-op investments, that together defendants engaged in a pattern of racketeering activity and that defendants devised a fraudulent scheme to deprive plaintiffs of their property by inducing them to

---

**2.** The complaints state that plaintiffs were induced to purchase both "cooperative apartments ('Units') and Shares of Stock in a cooperative venture known as 6209–15 Boulevard East Corp." Amended Complaint ¶ 14.

**3.** Under questioning by the Court at argument, counsel for Weiss was unable to identify for the Court any confidential information Weiss imparted.

purchase the cooperative apartments.[4] Plaintiffs seek compensatory and punitive damages.

On April 17, 1991 defendants REIG, Ender, Weiss, Want and Pelsinger moved to disqualify Realmuto & D'Alessio pursuant to Canons 4 and 9 of the Code of Professional Responsibility. The Court heard oral argument on June 26, 1991.

## DISCUSSION

■ In the Second Circuit, a motion to disqualify an attorney is addressed to the discretion of the district court. *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir. 1980), *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *Allegaert v. Perot*, 565 F.2d 246, 248 (2d Cir.1977). Any doubt should be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975).

### 1. Canon 4

Weiss seeks to disqualify Realmuto & D'Alessio on the ground that the attorneys have violated Canon 4 of the Code which is entitled "A Lawyer Should Preserve the Confidences and Secrets of a Client." Disciplinary Rule ("DR") 4–101(B) provides:

B. Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

1. Reveal a confidence or secret of a client.

2. Use a confidence or secret of a client to the disadvantage of the client.

3. Use a confidence or secret of a client to the advantage of the lawyer or of a third person, unless the client consents after full disclosure

(McKinney Supp.1991). While a client "confidence" is any information protected by the attorney-client privilege, client "secrets" include any other information gained in the professional relationship that the client has requested be held inviolate or disclosure of which would be embarrassing or would likely be detrimental to the client. DR 4–101(A) (McKinney Supp.1991).

■ The duty under DR 4–101(B) to preserve client confidences and secrets generally attaches only when an attorney-client relationship exists. *Premium Prods. Sales Corp. v. Chipwich, Inc.*, 539 F.Supp. 427, 433 (S.D.N.Y.1982). However, an analogous fiduciary obligation may be implied in the absence of a formal attorney-client relationship. *See Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). For example:

It is clear that where an attorney receives confidential information from a person who, under the circumstances has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidence irrespective of the absence of a formal attorney-client relationship.

*Nichols v. Village Voice, Inc.*, 99 Misc.2d 822, 417 N.Y.S.2d 415, 418 (Sup.Ct.1979). *See Rosman v. Shapiro*, 653 F.Supp. 1441, 1445 (S.D.N.Y.1987); *Trinity Ambulance Serv., Inc. v. G & L Ambulance Servs., Inc.*, 578 F.Supp. 1280, 1283 (D.Conn.1984). In either case, the duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result. *Westinghouse*, 580 F.2d at 1319 (fiduciary obligation); *New York Univ. v. Simon*, 130 Misc.2d 1019, 498 N.Y.S.2d 659 (Civ.Ct. 1985) (attorney-client privilege).

■ The record indicates that Weiss sought legal advice on behalf of himself and REIG and had adequate grounds for believing that a confidential relationship existed between himself and plaintiffs' attorneys. Although there is no indication that the documentary evidence he shared was confidential, other information he revealed regarding the inside nature of the transactions may constitute client secrets.[5]

4. The Court will not comment on its view of the RICO claim.

5. When the moving party is a former client of the challenged attorney and the later representation is substantially related to the prior representation, there is a presumption that the former client imparted confidential information. *See United States Football League v. National Football League*, 605 F.Supp. 1448, 1461 (S.D.N.Y.1985).

Disqualification under these circumstances is rooted in notions of fundamental fairness: allowing an attorney who is in a position to use confidential information gained through a relationship with the client's adversary would give the client an unfair advantage. *United States v. Ostrer*, 597 F.2d 337, 340 (2d Cir.1979).

2. Canon 9

 Canon 9 is entitled "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." The requirement that a lawyer avoid even the appearance of impropriety reflects the bar's concern that some conduct which is in fact ethical may appear to the layman as unethical and thereby erode public confidence in the judicial system and the legal profession. *SMI Indus. Canada Ltd. v. Caelter Indus., Inc.*, 586 F.Supp. 808, 818 (N.D.N.Y.1984) (citing *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir.1976)). A motion to disqualify under Canon 9 should be granted if the facts present a real risk that the trial will be tainted. *See Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979).

There are two situations which "raise the specter that litigation will be tainted," *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985), under Canon 9. They are:

> when the challenged attorney is concurrently representing adverse interests so that his vigor in pursuing the interests of one of them is questionable, or when the attorney's successive representation of adverse interests raises the possibility that in the present matter he will improperly use confidences gained in the prior representation to the detriment of his former client.

*Id.* (citations omitted). Although this is not strictly a successive representation problem because R & D consulted with plaintiffs and Weiss simultaneously, the second situation is implicated here. R & D's initial involvement with parties having adverse postures in this litigation raises significant risks that the trial will be tainted or will appear to laymen to be tainted. There is a likelihood that R & D will be deemed to be using confidences or secrets gained from Weiss to Weiss' detriment or the detriment of the other defendants. Plaintiffs' right to counsel of their choice, while important, must give way when required by the fair and proper administration of justice. *See United States v. Ostrer*, 597 F.2d at 341. Accordingly, defendants' motion to disqualify R & D is granted.

IT IS SO ORDERED.