Mary TISBY, Plaintiff,

v.

BUFFALO GENERAL HOSPITAL, Nurses United CWA Local 1168, Deborah M. Hayes, President and Communications Workers of America, AFL–CIO, Defendants.

No. 91–CV–304A.

United States District Court, W.D. New York.

Sept. 7, 1994.

Mahoney, Berg & Sargent, Buffalo, NY, for plaintiff (Wayne R. Gradl, of counsel).

Jaeckle, Fleischmann & Mugel, Buffalo, NY, for Buffalo General Hosp. (Phillip H. McIntyre, of counsel).

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, for Nurses United Local 1168, Deborah M. Hayes, President, and Communications Workers of America (Robert J. Reden, of Counsel).

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on July 9, 1991. On May 29, 1992, plaintiff moved, *inter alia,* to disqualify the law firm of Lipsitz, Green, Fahringer, Roll, Salisbury and Cambria ("Lipsitz, Green") from representing defendants Nurses United CWA Local 1168, Deborah M. Hayes, and Communications Workers of America, AFL–CIO, in this action, and for a protective order prohibiting the disclosure of certain handwritten notes provided by the plaintiff to her former attorney, Richard Lipsitz, Esq., of the Lipsitz, Green law firm. On March 28, 1994, Magistrate Judge Foschio issued a Decision and Order denying both plaintiff's motion to disqualify Lipsitz, Green and plaintiff's motion for a protective order. On April 14, 1994, plaintiff filed objections to the Magistrate Judge's Decision and Order.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a), this Court may not disturb Magistrate Judge Foschio's Decision and Order unless it is found to be clearly erroneous or contrary to law. Upon a review of the Decision and Order, and after reviewing the submissions of the parties and hearing oral argument from counsel, the Court finds that Magistrate Judge Foschio's Decision and Order of March 28, 1994 is neither clearly erroneous nor contrary to law. Accordingly, the Court overrules plaintiff's objections and affirms the Magistrate Judge's Decision and Order.

IT IS SO ORDERED.

## DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on July 9, 1991 for determination of any non-dispositive motions. The matter is presently before the court on Plaintiff's motion for a protective order and to disqualify counsel for the Defendant Unions, dated May 29, 1992, and the Defendant Unions' motion to compel discovery, dated June 1, 1992.

### *BACKGROUND and FACTS*

Plaintiff, Mary Tisby, filed this action on May 10, 1991. Plaintiff, a registered nurse, began working for Defendant Buffalo General Hospital ("Buffalo General") in June, 1971 as a Licensed Practical Nurse, and continued her employment with Buffalo General upon becoming a Registered Nurse in 1980.

Plaintiff relocated to Louisiana in 1984, but returned to Buffalo in February, 1986 and resumed employment with Buffalo General.

On April 4, 1989, Plaintiff was alleged to have improperly inserted a foley catheter in a patient causing that patient's injury. Plaintiff was placed on a two-day disciplinary suspension, and the incident was reported to the New York State Education Department, Office of Professional Discipline ("State Education Department"). Defendants Nurses United CWA Local 1168 and Communication Workers of America (the "Unions") timely filed a grievance on Plaintiff's behalf. Subsequent to the filing of the grievances, Plaintiff alleged that employees of Buffalo General began harassing her in an effort to force Plaintiff's resignation. Plaintiff filed grievances as to these incidents.

In March, 1990, Plaintiff was notified by the State Education Department that she would be subject to a disciplinary proceeding for alleged professional misconduct. Plaintiff retained Richard Lipsitz, Esq., an attorney with Lipsitz, Green, et al., the firm now representing the Defendant Unions, to represent her in the matter. The matter was discontinued on July 25, 1990 based on a lack of evidence.

On June 29, 1990, Plaintiff attended a meeting with several managing personnel of Buffalo General who alleged that Plaintiff had committed over six improper nursing practices during May and June, 1990. Another meeting was held on July 3, 1990, at which time Plaintiff's employment with Buffalo General was terminated. The Unions filed a grievance on behalf of Plaintiff protesting her termination. However, the Unions subsequently determined not to pursue the grievance regarding Plaintiff's termination through arbitration, and decided to withdraw from arbitration all other grievances involving Plaintiff, including the grievance concerning the two-day suspension for the April, 1989 incident.

Thereafter, Plaintiff filed this action against Buffalo General and the Unions, claiming that Buffalo General terminated her in violation of their collective bargaining agreement in place at the time, and claiming that the Unions breached their duty to fairly represent Plaintiff in her grievances against Buffalo General. Plaintiff also alleged a cause of action against Buffalo General for defamation and emotional distress.

On May 29, 1992, Plaintiff filed a motion for a protective order seeking an order prohibiting counsel for the Unions from releasing her handwritten notes containing a description of Plaintiff's recollections regarding the treatment of patient Arthur Wojcinski on April 4, 1989, prepared at the direction of Mr. Lipsitz. Plaintiff also seeks an order prohibiting counsel from disclosing or using these handwritten notes for any purpose in the instant litigation. Also on May 29, 1992, Plaintiff filed a motion to disqualify the firm of Lipsitz, Green, et al, from representing the Unions in this action based on a conflict of interest.

On June 1, 1992, Defendants filed a motion to compel the production of all photographs or sketches taken in the workplace at Buffalo General of Plaintiff or of other nurses with whom Plaintiff may have worked, depicting such nurse working with blood products or blood paraphernalia. Defendants had requested this production in their Third Notice to Produce, Item No. 1, dated March 23, 1992. Plaintiff objected to such production, stating that the existing photograph in question will be used solely for rebuttal evidence at trial and, as such, need not be disclosed at this time.

Oral argument on these motions was heard on June 25, 1992.

For the reasons as set forth below, Plaintiff's motion for a protective order is DENIED. Plaintiff's motion to disqualify Defendant Unions' counsel is DENIED. Defendant's motion to compel discovery is GRANTED.

## DISCUSSION

### 1. Plaintiff's Motion to Disqualify Lipsitz, Green as Counsel

 Disqualification of an attorney in order to forestall violations of ethical principles is a matter committed to the sound discretion of the court. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72–73 (2d Cir.

1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 3036, 120 L.Ed.2d 905 (1992). The Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel in order to protect a client's right to freely choose his own counsel. *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978); *Kubin v. Miller,* 801 F.Supp. 1101, 1112 (S.D.N.Y.1992). Motions to disqualify opposing counsel must be viewed in the context of favoring a party's right to be represented by counsel of its own choice, as opposed to disqualification as a strategic weapon. *Evans v. Artek Systems Corporation,* 715 F.2d 788, 792 (2d Cir.1983). Therefore, a movant has a heavy burden when seeking disqualification of opposing counsel. *Mazurkiewicz v. New York City Transit Authority,* 806 F.Supp. 1093, 1093 (S.D.N.Y.1992).

In this case, Plaintiff claims that as the issues involved in the investigation and proceedings of the State Education Department were substantially related to the issues involved in the grievances which Plaintiff sought to have pursued through arbitration, Plaintiff's prior counsel, Mr. Lipsitz, who represented Plaintiff in the administrative action, along with Mr. Lipsitz' firm, Lipsitz, Green, should be disqualified from representing the Unions in this action. Specifically, Plaintiff argues that three sections of the New York Code of Professional Responsibility preclude Lipsitz, Green from remaining as counsel for the Unions in this case. First, Plaintiff argues that Canon 4 states that a lawyer should preserve the confidences and secrets of a client. Second, Plaintiff states that Canon 5 provides that a lawyer should exercise independent professional judgment on behalf of a client, and should inform a prospective client of any potential conflicts of interest. Third, Plaintiff also states that Canon 9 provides that a lawyer should avoid even the appearances of professional impropriety. Finally, Plaintiff asserts that it is also possible that Mr. Lipsitz will be called as a witness in this action, invoking the provisions of DR–5–102(B).

Prior to the institution of this lawsuit, Mr. Lipsitz was retained personally by Plaintiff after Plaintiff was informed by the State Education Department that an administrative disciplinary action would be brought against her based on an allegation of unsafe nursing practices occurring on April 4, 1989. Plaintiff retained Mr. Lipsitz on the basis that "inasmuch as Richard Lipsitz, Esq. was the regular legal counsel for Defendant Unions, he was the logical choice to represent her vis-a-vis the State Office of Professional Discipline." *See* Affidavit of Mary Tisby, dated May 29, 1992, at p. 5, ¶ 11. Mr. Lipsitz agreed to represent Plaintiff in the administrative matter, and conducted meetings with Plaintiff and other union members in order to prepare the case. The disciplinary matter was subsequently dropped in July, 1990, and Mr. Lipsitz' representation of Plaintiff ceased. During the time period of Plaintiff's representation, Mr. Lipsitz also continued to represent the Unions in all other matters with Plaintiff's full knowledge. In fact, Plaintiff met with Mr. Lipsitz, along with two officials of the local Union, on September 24, 1990 to discuss Plaintiff's termination and other charges brought against Plaintiff by Buffalo General. There is no question that Mr. Lipsitz' representation of Plaintiff had ceased at that time as his representation of Plaintiff in the administrative matter had been completed, and that, at the meeting, Mr. Lipsitz was acting in his role as counsel for the Unions. Subsequent to the meeting, on November 3, 1990, Mr. Lipsitz drafted an opinion letter to the Unions where he recommended that the Unions not pursue any of Plaintiff's grievances, which included the grievance regarding the April 4, 1989 incident on the basis that Plaintiff's credibility was suspect, and the chance of successfully grieving the charges against Plaintiff was not likely.

 As noted above, Plaintiff seeks to disqualify the firm of Lipsitz, Green from representing the Unions on the ground that Lipsitz, Green, and Mr. Lipsitz have violated Canons 4, 5, and 9 of the Code of Professional Responsibility. DR–4–101(B) provides that, except when permitted under DR–4–101(C), a lawyer shall not knowingly: (1) reveal a confidence or secret of a client, (2) use a confidence or secret of a client to the disadvantage of the client, or (3) use a confidence or secret of a client to the advantage of

the lawyer or of a third person, unless the client consents after full disclosure. DR–4–101(B) (McKinney 1991). "While a client 'confidence' is any information protected by the attorney-client privilege, client 'secrets' include any other information gained in the professional relationship that the client has requested be held inviolate or disclosure of which would be embarrassing or would likely be detrimental to the client." *Liu v. Real Estate Investment Group*, 771 F.Supp. 83, 86 (S.D.N.Y.1991). The duty under DR–4–101(B) to preserve client confidences and secrets generally attaches only when an attorney-client relationship exists. *Liu, supra,* at 86. In this case, although the Unions argue that no attorney-client relationship existed between Plaintiff and Mr. Lipsitz, it is undisputed that Plaintiff personally retained Mr. Lipsitz and was billed personally by the Lipsitz, Green firm for work done by Mr. Lipsitz on her behalf. Therefore, the court finds that an attorney-client relationship existed between Plaintiff and Mr. Lipsitz for the purpose of handling her administrative action with the State Education Department.

■ Where a disqualification motion is based upon the need to preserve client confidences, an attorney may be disqualified from representing a client in a particular case if: (1) the moving party is a former client of the adverse party's counsel, (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and, (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *Evans v. Artek Systems Corp., supra,* at 791. *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977), suggests a fourth element of this test in that the moving party must demonstrate that the subject attorney was in a position to receive confidences that the moving party would expect would not be disclosed to the attorney's present client. *Allegaert, supra,* at 250.

■ In this case, there is no question that Plaintiff is a former client of Mr. Lipsitz. As to the second element, the test for determining whether a substantial relationship between the issues in the prior representation and the issues of the present case is a narrow one in the Second Circuit. Generally, motions to disqualify should be granted only if "the relationship between issues in the prior and present cases is 'patently clear,' ... 'identical' or 'essentially the same.' " *Government of India, supra,* at 739–40. Mr. Lipsitz's prior representation of Plaintiff was for the purpose of challenging a possible professional disciplinary action against Plaintiff because of the aforementioned April 4, 1989 incident. In this case, Plaintiff is suing the Unions for their failure to represent her in her various grievances against Buffalo General, including her ultimate termination. One of these grievances involved the April 4, 1989 incident. However, the issue in this case against the Unions is not to dispute the facts of that incident, although those facts will be disputed in the case against Buffalo General, but whether the Unions failed in their duty to represent Plaintiff against Buffalo General. The court does not find that these issues are identical or essentially the same. Whether Plaintiff has a meritorious claim against Buffalo General for an erroneous discharge based on her alleged grieved incidents is not relevant. Rather, in order for Plaintiff to prove her claim against the Unions she must demonstrate that the Unions breached their duty of fair representation as their actions were arbitrary, discriminatory, or in bad faith. *Air Line Pilots Association v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). This is a separate issue from the facts involved in Plaintiff's administrative disciplinary proceeding. However, even if, *arguendo*, the issues are similar, the court concludes that Mr. Lipsitz did not have access to relevant privileged information from Plaintiff.

■ In the course of representing Plaintiff, Mr. Lipsitz, with full knowledge of Plaintiff, necessarily conferred with the Unions, and conducted meetings with union officials in the presence of Plaintiff, in order to fully represent Plaintiff. Further, the Nurses Union was a long-standing client of Mr. Lipsitz. In fact, this is precisely the reason that Plaintiff retained Mr. Lipsitz. Plaintiff vigorously argues that Mr. Lipsitz never in-

formed Plaintiff that there could be a potential conflict of interest between Mr. Lipsitz' representation of both Plaintiff and the Unions. However, Plaintiff herself states that she was well aware of Mr. Lipsitz' relationship with the Unions. Additionally, Mr. Lipsitz' meetings with Plaintiff were attended by union members, and the information imparted to Mr. Lipsitz by Plaintiff was also disclosed to these union members. As stated in *Allegaert,* Plaintiff could not have believed that Mr. Lipsitz was representing her without the Unions' knowledge and approval, or that any information given by Plaintiff to Mr. Lipsitz was being kept confidential from the Unions. *Allegaert, supra,* at 250. Plaintiff herself allowed union members to attend her meetings with Plaintiff and Mr. Lipsitz, and, as discussed in Section One of this Decision and Order, Plaintiff disclosed her statement concerning the April 4, 1989 incident to union steward Terri Francis. The court finds that, contrary to Plaintiff's assertions, Mr. Lipsitz and his law firm did not change sides from a former client to a current, adverse client, rather, Lipsitz, Green, with Plaintiff's full knowledge, has had a "continuous and unbroken legal relationship with their primary clients [the Unions]." *Allegaert, supra,* at 251. Accordingly, there is no basis on which to disqualify Lipsitz, Green because of violations of Canon 4, and the motion, on that ground, is DENIED.

 Similarly, Canon 9, for the same reasons, does not apply. A motion to disqualify under Canon 9 should only be granted "if the facts presently present a real risk that the trial will be tainted." *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). A trial may be found to be tainted:

> when the challenged attorney is concurrently representing adverse interests so that his vigor in pursuing the interests of one of them is questionable, or when the attorney's successive representation of adverse interests raises the possibility that in the present matter he will improperly use confidences gained in the prior representation to the detriment of his former client.

*United States Football League v. National Football League,* 605 F.Supp. 1448, 1452 (S.D.N.Y.1985).

A court should be "quite hesitant" to disqualify attorneys solely on Canon 9 grounds. *Rosman v. Shapiro,* 653 F.Supp. 1441, 1446 n. 10 (S.D.N.Y.1987). In this case, the court does not find that there is an "obvious appearance of impropriety" because of the prior representation of Plaintiff by Mr. Lipsitz, and the current representation of the Unions by the Lipsitz, Green firm. Plaintiff was well aware of Mr. Lipsitz' ongoing attorney-client relationship with the Unions, and hired Mr. Lipsitz for that reason. Plaintiff's communications with Mr. Lipsitz and the union representatives negated any reasonable expectation that those communications would be treated as confidential and privileged by Mr. Lipstiz, at least as to the Unions, if not to other parties. The court concludes that Canon 9 does not require that the Lipsitz, Green firm be forced to discontinue its representation of the Unions because of their representation of Plaintiff in a related disciplinary proceeding with New York State that was subsequently dropped. There is no appearance of impropriety stemming from the continuing representation of the Unions by Lipsitz, Green. Accordingly, Plaintiff's motion to disqualify the firm of Lipsitz, Green from representing the Unions on the basis of Canon 9 is DENIED.

Finally, Plaintiff states that Lipsitz, Green should be disqualified because she may call Mr. Lipsitz as a witness at trial. The court notes that Mr. Lipsitz is not personally representing the Unions in this action. Plaintiff bases her argument on DR–5–102(B) which provides that:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or its is obvious that the lawyer or a lawyer in his or her firm may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal.

DR 5–102(A) also applies to the disputed issue, providing that:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on behalf of the client, the lawyer shall withdraw as an advocate before the tribunal. . . .

■ The test for determining whether an attorney "ought" to be called as a witness under DR 5–102(A) is not whether the attorney will actually be called as a witness, but, rather, whether the attorney's testimony could be "significantly useful" to his client. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989). If the testimony is found to be significantly useful, the attorney should be disqualified. *Lamborn, supra*, at 531. However, Rule 3.7 of the Model Rules "severely limits the circumstances in which vicarious disqualification of the attorney's firm is necessary," and the New York Code similarly provides that "only the attorney-witness who ought to testify on behalf of his client should be disqualified." *Kubin v. Miller*, 801 F.Supp. 1101, 1113 (S.D.N.Y.1992). The New York disciplinary rule, therefore, does not require automatic disqualification of the attorney's law firm, but only that the attorney-witness not continue as an advocate in the matter. According to both the Model Rules and the New York Code, it appears that Lipsitz, Green should not be disqualified under DR 5–102(A). *See, e.g., Minami International Corp. v. Clark*, 1991 WL 102464, at *1 (S.D.N.Y.1991).

■ Further, "although a literal reading of DR–102(B) mandates disqualification merely on the showing that the potential testimony of a witness-advocate *may* be prejudicial to the party his firm represents, under New York law the party seeking disqualification must demonstrate that it is likely that the 'testimony to be given by the witness is necessary' and that it is substantially likely to be prejudicial to the party represented by his firm." *Parke–Hayden v. Loews Theatre Management*, 794 F.Supp. 525, 527 (S.D.N.Y.1992) (quoting *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 515 N.Y.S.2d 735, 508 N.E.2d 647 (1987)) (emphasis in original). A court should weigh factors such as the significance of the matter, the weight of the testimony, and the availability of other evidence when making a determination of necessity. *Parke–Hayden, supra*, at 527. For testimony to be "prejudicial," it must be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Rice v. Baron*, 456 F.Supp. 1361, 1371 (S.D.N.Y.1978). The moving party "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." *Lamborn, supra* (quoting *Freeman v. Kulicke & Soffa Industries, Inc.*, 449 F.Supp. 974, 978 (E.D.Pa.1978)). Simply showing that the testimony "might" be prejudicial is not sufficient. *Freight Drivers, Helpers, Dockmen and Allied Workers Local No. 375 v. Kingsway Transports, Inc.*, 1991 WL 224380, at *2 (W.D.N.Y.1991).

■ The court finds that Plaintiff has not met her burden in showing that Mr. Lipsitz' testimony will be prejudicial to the extent that the Lipsitz, Green firm will be required to be vicariously disqualified. The evidence before the court does not indicate that Mr. Lipsitz' testimony would be significantly inconsistent from that of Plaintiff, and, therefore, prejudicial. Further, the prejudicial nature of the testimony which Mr. Lipsitz might be able to give, could also be obtained from the testimony of Terri Francis, the union steward, who stated that she told Plaintiff, during a meeting with Mr. Lipsitz, that Plaintiff's written version of the April 4, 1989 incident did not correspond with Plaintiff's earlier oral version. Taking Plaintiff's position to the extreme, any time a law firm acted as outside counsel for a union and also represented a union member in an issue in conjunction with that person's union membership, the firm would have to withdraw and not handle such litigation matters. This is not the law. *See, e.g., Adamo v. Hotel, Motel, Bartenders, Cooks, and Restaurant Workers' Union*, 655 F.Supp. 1129, 1129 (E.D.Mich.1987) (attorney who represented union in processing employee's griev-

ance was not disqualified from representing union in employee's subsequent action against union for breach of duty of fair representation); *Griesemer v. Retail Store Employee's Union Local # 1393,* 482 F.Supp. 312, 315 (E.D.Pa.1980) (court held that representing the union in processing a grievance does not automatically disqualify counsel from representing the union when the dissatisfied grievant sues). Further, such a result is certainly not what the drafters of the Model Code, Model Rules, and New York Code would have envisioned. *See Paretti v. Cavalier Label Co., Inc.,* 722 F.Supp. 985, 989 (S.D.N.Y.1989) (drafters of the Model Code indicate that, "in their opinion, vicarious disqualification ought to occur in relatively few cases, such as when a lawyer's testimony would be adverse to a client"). The level of prejudice requiring disqualification could be found if a lawyer's testimony "would contradict or undermine his client's factual assertions." *Lamborn, supra,* at 531. No such showing has been made here. Accordingly, the court finds that, based on Mr. Lipsitz' possible testimony at either a deposition, the trial, or both, Lipsitz, Green should not be disqualified as trial counsel. *See, e.g., Russo v. Friedman,* 1992 WL 196791, at *9 (S.D.N.Y.1992) (motion to disqualify law firm denied where plaintiff had not met his burden of proof to show prejudice). Accordingly, the law firm of Lipsitz, Green should not be disqualified from appearing on behalf of the Unions on the basis of Mr. Lipsitz' possible testimony, and Plaintiff's motion for disqualification is DENIED.

### 2. *Motion for a Protective Order*

Plaintiff is seeking a protective order from the court prohibiting the disclosure of handwritten notes made by Plaintiff which were given by her to Mr. Lipsitz, Plaintiff's prior counsel, in the course of Mr. Lipsitz' representation of Plaintiff in a disciplinary proceeding by the State Education Department. Plaintiff asserts that these notes were given to Mr. Lipsitz based upon his direction to Plaintiff that it would be necessary for his representation of Plaintiff to have Plaintiff's statement regarding the April 4, 1989 incident. The notes were subsequently sent to the State Education Department on Novem-

ber 27, 1989, and further disclosed, on June 9, 1990, to a third party, Ms. Terri Francis, a member and steward of Nurses United CWA Local 1168 ("Nurses Union"), on the advice of Mr. Lipsitz, in order for Francis to prepare to participate, on Plaintiff's behalf, in Plaintiff's arbitration of her grievances with Buffalo General. While Plaintiff permitted the disclosure of her notes to Francis, she states that she refused to allow the disclosure of the notes to Helen Cyrulik, another member of the Nurses Union.

However, in response, Cyrulik states that she was present in Mr. Lipsitz' office when Plaintiff's notes were disclosed to Francis. She also states that Mr. Lipsitz requested, as Francis was to testify in Plaintiff's behalf at the arbitration, that Plaintiff's notes be disclosed to Francis. Cyrulik also contends that Plaintiff voiced no concern over the disclosure, and made no objection when Cyrulik, seated next to Francis at the meeting with Mr. Lipsitz, read portions of the statement. Cyrulik further states that Francis read certain portions of the statement aloud, with no objection from Plaintiff. Francis also concurred in this recollection of the meeting. Francis did note that Plaintiff asked Francis not to leave her copy of the statement at the Union office. Mr. Lipsitz, in his affidavit, represented that the statement had been prepared for the sole purpose of forwarding such statement to the State Education Department for use as evidence, on Plaintiff's behalf, in the disciplinary action against Plaintiff, and that Plaintiff was aware the notes were to be disseminated to the State Education Department. *See* Affidavit of Richard Lipsitz, Esq., dated June 19, 1992, at p. 2, ¶ 5 and p. 4, ¶ 12.

In order to make a determination as to whether Plaintiff's handwritten notes should be disclosed to Defendants, it is necessary to determine whether the document is, in fact, within the attorney-client privilege. See, Fed.R.Evid. 501. If determined to be within the privilege, the court must then determine whether the privilege has been waived and the extent of such waiver. See, *In re Grand Jury Investigation,* 142 F.R.D. 276, 278 (M.D.N.C.1992).

 The attorney-client privilege requires that the asserted holder of the privilege is or sought to become a client, that the person to whom the communication was made. is an attorney admitted to practice, and that the communication was made while that person was acting as an attorney. *Hydraflow v. Enidine*, 145 F.R.D. 626, 630 (W.D.N.Y.1993). The communication must also relate to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing primarily an opinion of law or legal services or assistance in a legal proceeding. *Hydraflow, supra*, at 630. Further, to be enforceable the privilege must be claimed by the client, and not waived by the client. See, *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-60 (D.Mass.1950). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Whether a client's communication to an attorney is confidential depends on the existence of a subjective intention on the part of the client that the attorney keep the communication confidential. *In re Grand Jury Subpoena*, 391 F.Supp. 1029, 1033-34 (S.D.N.Y. 1975).

 Communications from an attorney to a client may also fall within the privilege if to disclose them would directly or indirectly reveal the substance of a confidential communication by the client, and if it was considered to be confidential by the client. *Upjohn, supra*, at 401, 101 S.Ct. at 688; *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 745 (Fed.Cir.1987); *Standard Chartered Bank, plc v. Ayala International Holdings*, 111 F.R.D. 76, 79 (S.D.N.Y.1986). Where, however, there is a clear intention that the document communicated to counsel is to be provided to a third party, the privilege is rendered inapplicable as the document is not intended to be confidential. *See United States v. Tellier*, 255 F.2d 441, 447 (2d Cir.1958).

 While the privilege "is an obstacle to the investigation of the truth" and should, therefore, be "confined to its narrowest possible limits," (see, *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.1973) (Friendly, J.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 200 (E.D.N.Y.1988)), neither should it be applied so as to chill the flow of candid information between client and attorney, defeating the proper and "salutory purpose" the privilege is designed to achieve within an adversary system of justice. See, *Upjohn, supra*, at 389, 101 S.Ct. at 682; *United States v. Tellier, supra*, at 452 (Lumbard, J. dissenting).

 The determinative factor is whether the client intends the communication to be confidential and therefore privileged or whether, there is an intent to disclose the communication to others (or if the client permits or directs the attorney to do so). In such a case, there can be no confidentiality. See, *United States v. Tellier, supra*; *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 380-81 (D.D.C.1978) ("it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence"). The burden of establishing that such confidence was intended and has been maintained, and that the privilege is applicable, is on the party who asserts it. *In re Horowitz, supra*, at 82.

"It is clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended, or as a waiver of the privilege." *In re Horowitz, supra*, at 81. *See also Teachers Insurance and Annuity Association of America v. Shamrock Broadcasting Co.*, 521 F.Supp. 638 (S.D.N.Y.1981) (court held that if a party voluntarily discloses a communication, or makes public a document containing an otherwise privileged communication, that party is held to have waived the attorney-client privilege). Further, "there is grave doubt that the client may choose selectively the persons to whom

he will divulge his confidences." *In re Grand Jury Subpoenas,* 561 F.Supp. 1247, 1259 (E.D.N.Y.1982).

In this case, Mr. Lipsitz claims that Plaintiff gave him the handwritten statement, at his request, in order for Mr. Lipsitz to forward the statement to the State Education Department as evidence in Plaintiff's case against the sought-after disciplinary actions. The statement was sent to the State Education Department, and such disclosure was with Plaintiff's knowledge. *See* Exhibit A, Notice of Motion for Protective Order, dated May 29, 1992 (noting 11/27/89 entry billing for services rendered, *i.e.* review of Plaintiff's statement and forwarding of statement to State Education Department). There is no evidence in the record that Plaintiff, at any time prior to this litigation, objected to the sending of the statement to the State Education Department. Further, in preparation for the disciplinary hearing with the State Education Department, Plaintiff, on the advice of Mr. Lipsitz, disclosed her statement to Terri Francis, a potential witness of Plaintiff's behalf. While there is some dispute as to whether Plaintiff permitted the disclosure of this statement to Helen Cyrulik, another union member, there is no contention with regard to the disclosure to Francis.

Plaintiff argues that the disclosure to Francis did not waive the privileged nature of her notes, as they were disclosed to an ally, for use by a witness on Plaintiff's behalf. This common defense doctrine was cited in *Sobol v. E.P. Dutton, Inc.,* 112 F.R.D. 99, 104 (S.D.N.Y.1986), where the court held that the disclosure of documents to a co-defendant for the purpose of preparing a common defense was not a waiver of the attorney-client privilege. However, this case is distinguishable from the instant case as Francis was certainly not a co-defendant with Plaintiff in the State Education Department's disciplinary proceedings, rather, Francis was simply attempting to aid Plaintiff in her effort to clear her name in an administrative proceeding.

Moreover, Plaintiff had earlier related to Francis her version of the April 4, 1989 incident, which was the subject of Plaintiff's handwritten notes. Therefore, the communication to Mr. Lipsitz of Plaintiff's version of the subject incident were not made with an expectation of confidence to her counsel solely for the purpose of receiving legal advice or assistance, but were made by Plaintiff for dissemination during the administrative proceedings.

■ Finally, Plaintiff argues that Mr. Lipsitz was not authorized to send the handwritten notes to the State Education Department, but, rather, was required to use Plaintiff's confidential notes for the purpose of completing the form sent to Mr. Lipsitz by Mr. Barone of the State Education Department. This argument is without merit. Certainly there is no question that, if Mr. Lipsitz had used the State Education Department form, it would have been completed using the information obtained from Plaintiff's notes. Therefore, the court finds that the information obtained from Plaintiff was not intended by Plaintiff to be kept confidential by Mr. Lipsitz. Accordingly, the handwritten notes do not fall within the attorney-client privilege, and a protective order against the discovery of the notes based on this privilege is DENIED.[1]

### 3. *Defendants' Motion to Compel*

Defendant Unions seek to compel Plaintiff to produce a certain photograph in Plaintiff's possession which allegedly shows another registered nurse, other than Plaintiff, at work at Buffalo General improperly using blood product paraphernalia. Plaintiff refuses to provide the photograph to the Unions on the ground that the photograph is to be used solely as rebuttal or impeachment evidence at trial, and, as such, it need not be disclosed pursuant to the Western District's Local Rule 13(d)(5). Local Rule 13(d)(5) states that, in preparing and serving a pre-

---

1. As the court has determined above that Lipsitz, Green should not be disqualified as counsel, and, accordingly, that Mr. Lipsitz' representation of Plaintiff for the purpose of her administrative proceeding was proper, the court does not address Plaintiff's argument that Plaintiff's statement should be "suppressed" on the basis that it is the "fruit of a poisonous tree," *i.e.,* the product of Mr. Lipsitz' improper representation of Plaintiff. *See* Plaintiff's Letter to the court, dated July 15, 1992.

trial statement prior to trial, documentary exhibits to be used solely for rebuttal purposes need not be identified and listed as an exhibit prior to their use at trial. Defendants argue that this Local Rule is not applicable to the scope of discovery, as it pertains to pretrial preparation after the completion of discovery.

Plaintiff claims that the photograph is not relevant for purposes of discovery under Fed.R.Civ.P. 26(b) as it is not relevant evidence, nor is it reasonably calculated to lead to the discovery of relevant evidence. Plaintiff claims that the photograph's only value is to possibly discredit Defendants' witnesses at trial, and that to disclose the photograph during discovery would allow Defendants to assess any impact the photograph might have on cross-examination, and to tailor the testimony accordingly. Plaintiff concedes that Local Rule 13(d)(5) would not prevent the discovery of the photograph if it were relevant to the action. In reply, Defendants claim that the photograph is relevant to the issue of Plaintiff's credibility at trial, since Plaintiff has contended that other nurses made the nursing mistake of which she herself is accused. However, as a compromise, Defendants suggested that the photograph in question not be disclosed until the party whose testimony is sought to be impeached has been deposed, thereby "freezing" the testimony of that party. *See* Defendant's Reply Memorandum, dated June 24, 1992, at p. 4.

■■■ "Discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition. Inquiry is routinely allowed about criminal convictions of a party or witness and similar matters that go to his credibility." *Coyne v. Houss,* 584 F.Supp. 1105, 1107 (E.D.N.Y.1984) (quoting 8 Wright & Miller, Federal Practice and Procedure: Civil § 2015 (1970)). However, "though evidence bearing upon the issue of credibility may be elicited in discovery proceedings, it must also be relevant to the subject matter of the suit." *Coyne, supra,* at 1107. *See also Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455, 462 (S.D.N.Y.1988) (discovery for purposes of impeachment

should be limited in the same manner that other discovery is constrained, *i.e.,* by determining whether it is reasonably likely to lead to admissible evidence). Disclosure that may reveal information that affects the credibility of a witness' trial testimony may be found to be discoverable. *Davidson Pipe Co., supra,* at 462.

Plaintiff in this case argues that the photograph in question is not relevant to any subject matter relating to this action as it depicts a nurse, other than Plaintiff, improperly handling blood product paraphernalia while working at Buffalo General. There is no dispute that Buffalo General, at the time it terminated Plaintiff, was not aware of the subject matter shown in the photograph, and there is no allegation that Plaintiff was subject to disparate treatment by Buffalo General. Plaintiff only plans to use the photograph if the nurse shown in the picture testifies at trial, and testifies in a manner inconsistent with the depiction in the photograph, in an attempt to impeach that nurse's testimony. Defendant, on the other hand, seeks to possibly use the photograph as evidence at trial as Plaintiff has made a substantive claim that other nurses utilized unsafe nursing practices at Buffalo General, and this photograph would be relevant to the proof of this substantive issue.

■■■ The court finds that, as Plaintiff has raised the issue of other nurses' alleged unsafe practices at Buffalo General, proof of these practices, as shown in the photograph, are relevant to the case at hand. However, pursuant to Rule 26(c), the court may limit discovery even if the information sought is relevant. Further, in appropriate cases, courts have protected materials that are primarily of an impeaching character. *Coyne, supra,* at 1109; *Wiesenberger v. W.E. Hutton & Co.,* 35 F.R.D. 556 (S.D.N.Y.1964). Therefore, the court directs that, prior to disclosure of this photograph, the deposition of the witness who is depicted in the photograph, along with the deposition of Plaintiff, and any other affected witnesses, should be conducted. Only after these depositions are completed, should Plaintiff disclose the photograph to Defendants. *See Daniels v. National Railroad Passenger Corporation,* 110

F.R.D. 160, 161 (S.D.N.Y.1986) (where plaintiff sought to compel production of photographs, movies, and videotapes, court ordered disclosure, but stated that, "before the disclosure … defendant must be afforded the opportunity to take the depositions of the plaintiff and any other affected persons, so that the prior recording of their sworn testimony will avoid any temptation to alter that testimony in light of what the films or tapes show").

### CONCLUSION

Based on the foregoing discussion, Plaintiff's motion for a protective order is DENIED; Plaintiff's motion to disqualify Lipsitz, Green as counsel is DENIED; and, Defendants' motion to compel discovery is GRANTED, subject to the court's limitation as set forth in Section 3.

SO ORDERED.

DATED: March 28th, 1994.