John W. SYPOSS, Jr. and Carol Syposs, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 97–CV–572S F.

United States District Court, W.D. New York.

Sept. 2, 1998.

---

2. Mr. DiPirro affirms that the vehicle was traded to a dealer in August or September of 1997.

Jasen, Jasen & Sampson, P.C., Buffalo, NY, for plaintiffs, William E. Nowakowski, of counsel.

Denise E. O'Donnell, United States Attorney, for defendant, Buffalo, NY, Lynn S. Edelman, Assistant United States Attorney, of counsel.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned for all non-dispositive pretrial matters

by order of Hon. William M. Skretny dated May 27, 1998. It is presently before the court on Defendant's motion, filed August 10, 1998, to quash a third-party subpoena issued by Plaintiffs pursuant to Fed.R.Civ.P. 45.

## BACKGROUND AND FACTS

In this Federal Tort Claims Act action for malpractice, Plaintiffs allege that Defendant's employee physicians, Drs. Lorenzo T. Teruel and Larry L. Meyers, negligently removed Plaintiff John W. Syposs, Jr.'s lymph node, causing physical injuries. During the deposition of Dr. Meyers, it was learned that on June 21, 1998, the day before Dr. Meyers's scheduled deposition, Dr. Teruel had a telephone conversation with Dr. Meyers. Under Plaintiffs' questioning, Dr. Meyers testified that in the conversation, Dr. Teruel simply advised Dr. Meyers to tell the truth. The call was made over Dr. Meyers's cellular phone while Dr. Meyers was driving in his car at a time when he was able to call back to Dr. Teruel who had left a page for Dr. Meyers at the local VA Hospital requesting that Dr. Meyers contact him. Dr. Meyers also testified that he had no contact with Dr. Teruel for the past two years. Meyers further stated that he did not know how Dr. Teruel may have been aware that he was to deposed the next day.

Following the deposition, Plaintiffs issued a subpoena to Dr. Meyers's cellular phone company for Dr. Meyers's cell phone records for the period May through July, 1998. Defendant filed the instant motion on behalf of Dr. Meyers, arguing that Dr. Meyers's privacy will be unnecessarily invaded and that as the requested information is irrelevant to the issues in the lawsuit, the subpoena amounts to a "fishing expedition." Plaintiffs oppose the motion on the grounds that neither Defendant nor Dr. Meyers has any privacy interest in the business records sought by the subpoena, and therefore neither have standing to bring the motion. Plaintiffs countered that the requested information is relevant to issues of Dr. Meyers's credibility.

At oral argument, conducted on August 17, 1998, Defendant's attorney stated that both Dr. Teruel and Dr. Meyers are expected to testify and while no affidavit of Dr. Meyers was included in Defendant's motion papers, that Dr. Meyers objects to the subpoena because some of the subpoenaed records include telephone calls between Dr. Meyers and his patients. Plaintiffs' attorney supplemented the basis for the subpoena stating that the requested information may also reveal other communications between Teruel and Meyers thus suggesting a possibility of improper witness tampering which could justify further depositions. The court directed the requested record be submitted to it for an *in camera* review and reserved decision on the motion. For the reasons which follow, the motion is DENIED.

## DISCUSSION

■ The reach of a subpoena issued pursuant to Fed.R.Civ.P. 45 is subject to the general relevancy standard applicable to discovery under Fed.R.Civ.P. 26(b)(1). *Eisemann v. Greene,* 1998 WL 164821, *2 (S.D.N.Y.1998) (granting motion to quash on ground that requested information was of "doubtful and tangential relevance"); *Cofield v. City of LaGrange,* 913 F.Supp. 608, 614 (D.D.C.1996) (court has authority to enforce broad relevancy standard against subpoena under Fed.R.Civ.P. 26(b)); *Sierra Rutile Limited v. Katz,* 1994 WL 185751, * 3 (S.D.N.Y.1994) (citing 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC-TICE AND PROCEDURE: CIVIL § 2457 (1971)). Fed.R.Civ.P. 45(c)(3)(B)(i) allows the court to quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. *Sierra Rutile Limited, supra,* at *2. Plaintiffs do not dispute that some of Dr. Meyers's patients' phone numbers may be among the items of information which would be revealed if the subpoena is enforced. Dr. Meyers is a physician and many of the calls, as represented by Defendant, were made to Dr. Meyers's patients and in connection with the conduct of his medical practice. While the records of the cellular phone company have not been shown to be trade secrets, the court finds that the information detailing Dr. Meyers's out-going telephone calls on his cellular phone qualify as confidential commercial in-

formation subject to protection under Fed. R.Civ.P. 45(c)(3)(B)(i). Further, even if Fed. R.Civ.P. 45(c)(3)(B)(i) does not apply, the court may modify or quash to protect individuals from undue annoyance as provided by Fed.R.Civ.P. 26(c). *Sierra, supra.*

Plaintiffs argue that no privacy interest exists in the subpoenaed records as Dr. Meyers can have no reasonable expectation of privacy in a cellular telephone call or in the numbers recorded by the telephone company. Plaintiffs rely on *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) where the Supreme Court held that there was no reasonable expectation of privacy in the telephone numbers, dialed by a person from his private telephone as recorded by the phone service company, to invoke the protection of the Fourth Amendment. Plaintiffs also assert that Dr. Meyers has no reasonable expectation of privacy in the records because the calls themselves are susceptible to eavesdropping by third-parties. In either case, the court is unpersuaded.

Here, the issue is whether Dr. Meyers's interest in non-disclosure of the requested information is sufficient to permit him to seek relief under Rule 26(c) or Rule 45. While *Smith* held that a person may not have a reasonable expectation of privacy to avoid the need for a warrant under the Fourth Amendment for information created or maintained by a commercial entity, *Smith* did not hold that there is no interest in the confidentiality of such records which may be protected against unregulated disclosure in response to civil discovery requests. In *Smith,* the Court noted that financial records created for a customer by a bank does not carry a reasonable expectation of privacy to bring the records within the warrant clause. *Smith, supra,* at 742, 99 S.Ct. 2577 (citing *United States v. Miller,* 425 U.S. 435, 442–444, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)) (holding bank records voluntarily created by depositor not protected under the Fourth Amendment). Nevertheless, discovery of bank records through a third-party subpoena has been held subject to judicially imposed conditions and the party whose records are at issue to have standing to move against the subpoena. *Sierra, supra,* at *2 (citing cases)

(party held to have standing to move to quash; motion denied as financial information held by banks and other financial institutions sought was relevant); *Chazin v. Lieberman,* 129 F.R.D. 97, 98 (S.D.N.Y.1990) (party-defendant held to have standing to quash subpoena seeking bank records and subpoena limited in scope).

There is no inconsistency between the holding in *Smith, supra,* and cases applying limitations on discovery, including Rule 45 subpoenas, in federal civil cases. To breach the privacy protected by the Fourth Amendment, an applicant for a warrant must establish probable cause, a substantially more demanding showing than the broad relevancy test which governs the exercise of discovery under the Federal Rules of Civil Procedure. Thus, it is sensible that a reasonable expectation of privacy be required for targeted information to invoke a need to show probable cause in the typical criminal investigation subject to Fourth Amendment protections but that less stringent thresholds for protection of confidential information against discovery requests based on relevancy be required to protect against unfettered discovery in the arena of civil litigation. *See, e.g.,* Fed.R.Civ.P. 26(c) ("good cause" required for protective order to prevent annoyance, embarrassment, oppression, and undue burden, or unnecessary interference with confidential information). Confidential information that does not establish a constitutionally protected privacy interest may nevertheless be entitled to protection against unwarranted public disclosure resulting from discovery in federal civil litigation. *Long v. American Red Cross,* 145 F.R.D. 658, 664 (S.D.Ohio1993) (fact that donation of blood negates any reasonable expectation that donor's medical condition will not be eventually revealed does not prevent donor from seeking "appropriate protective order limiting disclosure of the information" to "accommodate this kind of privacy interest"); *Borzillieri v. American National Red Cross,* 139 F.R.D. 284, 288 (W.D.N.Y.1991) (witness's AIDS risk status held sufficiently confidential to warrant protective order). Put simply, even if Dr. Meyers had no reasonable expectation of privacy in the records at issue for Fourth Amendment purposes, he main-

tains a legitimate interest in preserving the confidentiality of the records against disclosure and may therefore seek the relief requested.

■ Further, there is no merit in Plaintiffs' assertion that no privacy interest exists in Dr. Meyers's cell phone communications because such phone communications may be subject to interception by eavesdroppers. First, there is no indication that Dr. Meyers's expectation of privacy in any of the underlying communications was breached. Second, even if that had occurred, the related telephone numbers of the party called as recorded by the phone company would not thereby be revealed. Third, the fact that the technology is not eavesdrop-proof does not in itself defeat any expectation of privacy. One does not simply "tune in" to someone's cell phone conversation like dialing a favorite radio program. If there was no expectation in the privacy of typical cell phone communications, it is doubtful this medium would be as widely used as it is.

Finally, Plaintiffs' reliance on *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir.1975) is misplaced. While stating the general rule that a party lacks standing to quash a third-party subpoena, there the court upheld the trial court's order quashing such a subpoena on plaintiff's motion where the records sought "had no relevance to the main issues in the case." *Langford, supra,* at 1126. The court therefore finds that Defendant and Dr. Meyers have standing to make the instant motion.

■■ The court turns to the question of whether Plaintiffs' subpoena seeks relevant information. "Disclosure that may reveal information that affects the credibility of a witness' trial testimony may be found to be discoverable." *Tisby v. Buffalo General Hospital,* 157 F.R.D. 157, 170 (W.D.N.Y. 1994) (citing *Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455, 462 (S.D.N.Y. 1988)). Whether a discovery request directed to credibility claims is relevant depends on several factors including the relationship of the evidence of untruthfulness sought and the substantive issues in the litigation. *Tisby, supra,* at 157; *Davidson Pipe, supra,* at 463. Here, Plaintiffs state that the request-

ed information may reveal that, contrary to Dr. Meyers's deposition testimony, there were other telephone calls between Dr. Teruel and Dr. Meyers providing not only a basis to contradict Dr. Meyers but also to request further depositions of both witnesses to inquire as to whether such pre-deposition conversations occurred and, if so, whether their substance related to the testimony Dr. Meyers may give at his deposition.

If the purpose of the subpoena was solely for the purpose of finding a mere inconsistency between Dr. Meyers's testimony that only one pre-deposition phone call between himself and Dr. Teruel occurred and the fact that other calls had taken place, the request would violate the collateral issue rule rendering it irrelevant. *See United States v. Franzese,* 392 F.2d 954, 962 (2d Cir.1968) ("Could the fact as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?" quoting Wigmore, Evidence § 1003 at 657 (3rd Ed.1940)). Evidence of the supposed inconsistency not being relevant to any issue as to Plaintiffs' malpractice claim, it would have no independent basis for admissibility. However, as noted, Plaintiffs also assert their purpose in issuing the subpoena was to ferret out potential collusion between Dr. Meyers and Dr. Teurel who are expected to testify to the main facts at issue in the case. On this basis, the request seeks relevant information.

■ As a general matter, "[m]atters bearing directly upon the credibility of the witness in a manner other than merely through contradiction, such as.... corruption [of witnesses] ..." are an exception to the collateral issue rule. John W. Strong on Evidence § 48 at 183 (4th ed.) For the purpose of the collateral issue rule, corruption includes attempts to induce a witness to testify untruthfully. *United States v. Medical Therapy Sciences, Inc.,* 583 F.2d 36, 41 (2d Cir.1978) ("The commentators agree that '[e]vidence of corrupt conduct on the part of a witness should be regarded as an attack on his truthfulness warranting supportive evidence..'.") (internal citations omitted); *United States v. Haggett,* 438 F.2d 396, 398 (2d Cir.1971) (extrinsic evidence admissible to

contradict witness who claimed he had not attempted to suborn perjury); *Foster v. United States,* 282 F.2d 222, 224 (10th Cir. 1966) (observing that corruption is an exception to collateral source rule based "a general unscrupulousness for the case at hand.") (citing WIGMORE, EVIDENCE (§ 945 3d ed.1940)). If it could be demonstrated that Dr. Meyers's deposition testimony may have been modified because of undisclosed communications with Dr. Teruel, such fact could bring the requested evidence within the corruption of witness exception. As the challenged subpoena seeks information which is calculated to lead to the discovery of admissible evidence, the records sought are relevant. *Haggett, supra,* at 399 (bias or interest of a witness and potential witness tampering not a collateral issue) (citation omitted).

In sum, Defendant and Dr. Meyers have standing to assert Dr. Meyers's legitimate confidentiality interests in the subpoenaed records and the subpoena seeks relevant information. Dr. Meyers's confidentiality interests can be met by conducting an *in camera* review of the subpoenaed information. By comparing the listed outgoing numbers called on Dr. Meyers's cell phone, appearing on the requested billing records, with any telephone numbers attributable to Dr. Teruel the court can determine whether any of the listed data should be revealed to Plaintiffs while redacting the other irrelevant calls. Only information regarding calls from a Teruel number to a Meyers number will be provided to Plaintiffs. The records will be sealed to provide for further possible judicial review.

Defendant has, at the court's direction, delivered a list of Dr. Teruel's numbers for the court's review. Plaintiffs also have delivered to the court their own list of what they believe to be numbers associated with Dr. Teruel. The court has reviewed the records submitted and finds no indication of any phone calls from Dr. Meyers to Dr. Teruel, other than the June 21, 1998 phone call about which Plaintiffs are already aware. There is, accordingly, no need for any redacted disclosure to Plaintiffs of the subpoenaed records.

*CONCLUSION*

The Defendant's motion to quash is DENIED.

SO ORDERED.